IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY W. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | 1:16-cv-01078 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | Magistrate Judge Susan E. Cox |
| BNSF RAILWAY COMPANY | ) | |
| | ) | Jury Demand |
| Defendant. | ) | |

**DEFENDANT BNSF RAILWAY COMPANY'S MOTION TO DISMISS
PLAINTIFF'S PETITION FOR LACK OF SUBJECT-MATTER JURISDICTION**

This case arises from a labor dispute between BNSF Railway Company ("BNSF") and the Brotherhood of Locomotive Engineers and Trainmen ("BLET"), a union that represents many of its locomotive engineers, including Plaintiff Anthony W. Smith ("Mr. Smith"). A virtually identical petition was filed by BLET, on Mr. Smith's behalf, against BNSF last year in the United States District Court for the District of Wyoming. (Ex. A, BLET Pet. to Enforce Backpay, D. Wy., Jan. 15, 2015,). The petition was subsequently dismissed for lack of personal jurisdiction. (Ex. B, D. Wy. Final J., June 12, 2015). Mr. Smith appears now to be refiling that suit in the Northern District of Illinois on his own behalf.

Mr. Smith was dismissed by BNSF, and was subsequently reinstated pursuant to two National Railroad Adjustment Board ("NRAB") arbitration awards ("Awards") obtained by the BLET on his behalf. BNSF and BLET disagree about the calculation of Mr. Smith's back pay pursuant to the NRAB Awards. BNSF, in order to avoid giving Mr. Smith a windfall, seeks to offset Mr. Smith's outside earnings when calculating his back pay. BLET contends that this is improper. The NRAB Awards are silent on the issue of offset. Rather, the collective bargaining agreement (CBA) between BLET and BNSF governs whether BNSF can properly offset outside

1

earnings. Thus, the instant dispute regarding the calculation of back pay is really a dispute about the proper interpretation of the CBA and the enforcement of the parties' rights under the CBA. BNSF's interpretation and application of the CBA is "arguably justified." As such, this Court lacks subject-matter jurisdiction as this matter involves a minor" dispute within the meaning of § 3 First (i) of the Railway Labor Act ("RLA"), which must be adjudicated pursuant to RLA mechanisms. Mr. Smith's remedy, if any, lies in filing a new claim under the CBA. Alternatively, because this dispute requires interpretation of the NRAB Award, it should be remanded to the arbitrator, where it can be consolidated with BNSF's pending request for interpretation in that forum.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits a party, before filing a responsive pleading, to move to dismiss a petition for lack of subject-matter jurisdiction. When considering a motion to dismiss that challenges the factual basis for an assertion of subject-matter jurisdiction, the district court may consider "whatever evidence has been submitted on the issue." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007). Here, BNSF relies on the allegations in Mr. Smith's Petition, the exhibits to the Petition, and the accompanying Declaration and Exhibits of William L. Yeck ("Yeck Decl."). (*See* Ex. C, Pl.'s Pet., Jan. 25, 2016; Ex. D, Yeck Decl.).

## II. FACTUAL BACKGROUND

### A. The Parties

#### 1. The Defendant, BNSF Railway Company.

BNSF is a Class I common carrier by rail under the Interstate Commerce Act and a carrier as defined in § 1 First of the Railway Labor Act, 45 U.S.C. § 151 First. (Ex. C, Pl.'s Pet., ¶¶2-3).

#### 2. Plaintiff Anthony W. Smith.

Mr. Smith is an Engineer for BNSF, who resides in the State of Illinois. (Ex. C, Pl.'s Pet. ¶¶1, 6).

### B. National Railroad Adjustment Board, Award Nos. 28141 and 28142.

On June 6, 2011, Mr. Smith was notified by BNSF that he was to attend a formal investigation hearing on charges that he had allegedly failed to stop for a stop signal on June 2, 2011. (Ex. C, Pl.'s Pet. ¶6 & Pet. Ex. 2, at 1). On March 15, 2012, prior to the formal investigation, Mr. Smith was notified by BNSF that he was to attend a second formal investigation hearing on charges that he had again allegedly failed to stop for a stop signal on March 13, 2012. (Ex. C, Pl.'s Pet. ¶¶6, 15 & Pet. Ex. 1, at 1). On June 6, 2012, following the investigation hearing on the first failure to stop offense, Mr. Smith was dismissed from service. (Ex. C, Pl.'s Pet. ¶6). On November 26, 2012, following the investigation hearing on the second failure to stop offense, BNSF issued a second dismissal notice. (*Id.*)

BLET appealed both dismissals on Mr. Smith's behalf to BNSF. When the parties could not agree, BLET initiated a proceeding before the NRAB. (Ex. C, Pl.'s Pet. ¶¶9, 15). As relief, BLET requested that Mr. Smith be reinstated and compensated for "all time lost, *without deduction of outside earnings*." (Ex. E, Case No. NRAB-130404, p. 1; Ex. F, Case No. NRAB-

130405, p. 1). In support of this request, BLET cited the CBA, "which requires employees working under the CBA who are not proven to be guilty as charged, [to be] 'reinstated, *paid for time lost* and the record corrected.'" (Ex. E, Case No. NRAB-130404, p. 11; Ex. F, Case No. NRAB-130405, p. 18 (emphasis added)). BLET also stated, "if the Carrier makes any attempt to offset a claim by deducting for outside income earned during the period in question, we may request an arbitration of the Arbitrator's intent of the award." (Ex. E, Case No. NRAB-130404, p. 12; Ex. F, Case No. NRAB-130405, p. 18).

The NRAB is a specialized arbitration board, created by Congress, to adjudicate disputes between railroads and railroad unions by interpreting and applying the relevant collective bargaining agreement. *See* 45 U.S.C. § 153 (creating the National Railroad Adjustment Board). Representatives from each side argue their case to the NRAB via written motions and oral argument, after which the NRAB issues a written award. *See* 45 U.S.C. § 153 (j), (m), & (n) (creating the procedure for how NRAB awards are issued and interpreted). If, after that written award is issued, a question arises about its meaning, the Railway Labor Act requires that the parties submit a request for interpretation to the arbitration board that issued the award and allow that board to rule on the interpretation dispute. *See* 45 U.S.C. § 153(m) ("In case a dispute arises involving an interpretation of the award, the division of the board upon request of either party shall interpret the award in the light of the dispute.")

In this case, on November 25, 2014, the NRAB issued Award Nos. 28141 and 28142, in favor of Mr. Smith, finding that Mr. Smith should not have been dismissed because he had not received proper notice pursuant to the CBA of the formal investigation hearings that preceded his dismissals. (Ex. C, Pl.'s Pet. & Pet. Ex. 1 at 2 and Ex. 2 at 3). As a remedy, the Awards stated that Mr. Smith was to be returned to service, after BNSF re-tested and re-trained him, and

evaluated his medical fitness to operate in his former capacity.  (*Id*.)  The Awards did not state whether the CBA's provision allowing compensation of an employee for "time lost" permitted BNSF to withhold outside earnings.

**C.     The Current Dispute.**

After receiving the NRAB Awards, BNSF began efforts to comply with the NRAB's orders to reinstate Mr. Smith.  On December 22, 2014, BNSF sent Mr. Smith a letter containing the conditions he needed to satisfy, pursuant to the Awards, to achieve reinstatement.  These conditions included re-testing, re-training, and a medical evaluation.  (Ex. C, Pl.'s Pet. & Pet. Ex. 7).  In the letter, BNSF informed Mr. Smith that his pay for time lost would be offset by outside earnings.  (*Id*.)  On December 22, 2014, BNSF initiated proceedings for interpretations of the Awards with the NRAB.  (Ex. C, Pl.'s Pet. & Ex. 6).  In the request for interpretation, BNSF requested "for the Referee to clarify whether the Award states any position on offset, and the proper remedy to be applied therein."  (*Id*.)  While the interpretation proceedings were pending, on January 15, 2015, BLET filed suit against BNSF in United States District Court for the District of Wyoming.  (Ex.  A, BLET Pet. To Enforce Backpay ).  That action was dismissed on June 12, 2015, for lack of personal jurisdiction against BNSF.  (App.7078 at 2).

On January 8, 2016,  Smith separately filed case number 16-cv-00300 (N.D. Ill.), currently before Judge Harry D. Leinenweber, wherein Mr. Smith alleges that BNSF's failure to pay his lost wages without making the deductions for outside earnings violates Title VII of the Civil Rights Act . *See Smith v, BNSF Ry. Co., et. al.,* 16-cv-00300 (N.D.Ill).  On January 25, 2016, Mr. Smith filed the present action, *pro se*, and using nearly identical allegations as those contained in BLET's prior suit.  (*See generally* Ex. A, Ex. A, BLET Pet. to Enforce Backpay)

## III. ARGUMENT

### A. Arbitration Under the Railway Labor Act

The Railroad Labor Act ("RLA") "provides a comprehensive and mandatory framework for resolving labor disputes under collective bargaining agreements." *Bhd. of Maint. of Way Employees Div. v. BNSF Ry. Co.*, 596 F.3d 1217, 1222 (10th Cir. 2010); *see also, e.g. IBEW v. CSX Transp., Inc.*, 446 F.3d 714, 717 (7th Cir. 2006) ("The RLA recognizes that the transportation industry is critical to the nation's economy and . . .establishes a comprehensive framework to. . .resolve labor disputes involving railroads (and airlines)." Disputes involving interpretation or application of collective bargaining agreements are known as "minor" disputes. *Consol. Rail Corp. v. RLEA*, 491 U.S. 299, 303-04 (1989) ("*Conrail*"). The Act requires that such disputes be resolved in mandatory and binding arbitration before the NRAB or a "special board of adjustment," sometimes also referred to as a "public law board," or "PLB." 45 U.S.C. §§ 153 First (i); 153 Second; *Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry.*, 768 F.2d 914, 921 (7th Cir. 1985) ("*Atchison*").

These arbitration panels – which are "peculiarly familiar" with the railroad world – have exclusive jurisdiction over the merits of disciplinary grievances and contract interpretation disputes. *Gunther v. San Diego & Arizona Eastern Ry.*, 382 U.S. 257, 261 (1965). Congress intended that minor disputes would be resolved in arbitration, not the courts. *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978); *Slocum v. Delaware, Lackawanna & W. R.R.*, 339 U.S. 239, 243-44 (1950). More specifically, Congress intended that such disputes would be decided by "railroad men, both workers and management, serving in the Adjustment Board with their long experience and accepted expertise in the field." *Gunther*, 382 U.S. at 262. Thus, federal courts lack jurisdiction to reach the merits of any aspect of a minor dispute. *See e.g. Jackson v. Consol.*

*Rail Corp.*, 717 F.2d 1045, 1057 (7th Cir. 1983), *cert. den.* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

In order to ensure that minor disputes are fully and finally resolved in arbitration – not in court – the RLA provides a mechanism to address post-arbitration disagreements that sometimes arise over the meaning of a particular arbitration award. Section 3 First (m) of the RLA states that if a "dispute arises involving an interpretation of the award, the [Board] upon the request of either party shall interpret the award in light of the dispute." 45 U.S.C. § 153 First (m). "[D]isagreement about the meaning of an award amounts to disagreement about the meaning of the underlying collective bargaining agreement," and is therefore a minor dispute, meaning that the federal courts lack jurisdiction to resolve such matters. *Bhd. of Maint. of Way Employees v. BNSF Ry. Co.*, 24 F.3d 937, 938 (7th Cir. 1994).

On occasion, a party engaged in a dispute over interpretation of an award will seek to "enforce" its interpretation in court under § 3 First (p) of the RLA, and thereby evade the obligation to resolve interpretative questions before the arbitrator. *Bhd. of Maint. of Way Employees v. BNSF Ry. Co.*, 24 F.3d at 938 (a party seeking to enforce an award generally contends that "no 'interpretation' is necessary"). However, the courts have been quite clear that "[t]he judicial duty to enforce an arbitration award . . . is neither a duty nor a license to interpret it." *Atchison,* 956 F.2d at 160; *see also, e.g.*, *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 279 (7th Cir. 1992) ("It is well-settled that the district court generally may not interpret an ambiguous arbitration award."); *Kotakis v. Elgin, Joilet & Eastern Ry. Co.*, 520 F.2d 570, 574 (7th Cir. 1975) (same). Thus, when an enforcement action under § 3 First (p) implicates a dispute over the interpretation of an award, the proper course is to remand the matter to the arbitrator.

*Atchison*, 956 F.2d at 160-61; *see also Tri-State Business Machines, Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1017 (7th Cir. 2000) (same).

When one party argues that an award is clear and enforceable, and the other party argues that there is an ambiguity or omission that calls for interpretation, courts employ a variation on the test set forth in *Conrail* for classifying minor disputes. Under the *Conrail* test, a dispute is minor – and therefore subject to arbitration – so long as the railroad's proffered interpretation of the collective bargaining agreement is "arguable" or is not "frivolous." *Conrail,* 491 U.S. at 303-04. Likewise, a dispute over an arbitration award should be left to the arbitrator so long as the parties' competing interpretations of the award are "arguable." *See Bhd. of Maint. of Way Employees Div./IBT v. BNSF Ry. Co.*, Case No. 11-cv-8211, 2012 U.S. Dist. LEXIS 82848, at *7 (N.D. Ill. June 11, 2012) (finding that the railroad's interpretation of the award "is at least arguable.") *see also, e.g., APA v. Pan Am. Airways*, 405 F.3d 25, 32-33 (1st Cir. 2005) (dispute must be remanded when carrier has articulated a "sufficiently plausible" construction of the award); *Bakery, Confectionary & Tobacco Workers Local Union No. 362-T v. Brown and Williamson Tobacco Corp*., 971 F.2d 652, 655-56 (11th Cir. 1992) (remand is proper when "both parties offered 'incongruous, yet plausible' interpretations" of award); *Sabo v. Metro-North R.R.*, No. 96 Civ. 5201 (KMW), 1997 U.S. Dist. LEXIS 2040 (S.D.N.Y. Feb. 27, 1997) (when language of award is not "clear on its face," remand is proper). Choosing between plausible competing interpretations of an award would be inconsistent with the principle that arbitrators, not courts, should resolve the merits of minor disputes. Thus, "when in doubt the courts are to construe disputes as minor." *Bhd. of Maint. of Way Employees Div. v. BNSF Ry. Co.*, 596 F.3d at 1223 (internal quotes omitted).

**B.     Courts Routinely Refer Disputes Over Award Remedies Back to the Arbitrator.**

Since the *Conrail* decision, disputes over the calculation of back pay (as well as other remedy issues) have repeatedly been litigated. Consistent with the strong bias in favor of allowing arbitrators to make the substantive decisions in railroad labor cases, the weight of authority in such cases supports remanding the issue back to the arbitrator.

For example, in *Atchison*, the post-award dispute centered on what sort of offsets the railroad was entitled to make in calculating severance benefits. *Atchison*, 956 F.2d at 158-60. The railroad argued that it should be permitted to deduct for the period of time after the employee was offered a new job. The union argued that the award did not say anything about offsets, and so none were allowed. The district court adopted the union's view and enforced the award, but the Seventh Circuit reversed. The Seventh Circuit explained that "what the union was seeking was not enforcement of the award *tout court*, but enforcement of its interpretation of the award, under which the company's offset was extinguished." *Id.* at 160. The Seventh Circuit further reasoned that "whether the union's interpretation is right or wrong… in accepting [the union's argument] the district judge implicitly interpreted the agreement, which she lacked the statutory authority to do." *Id., see also, e.g., Bhd. of Maint. of Way Employees Div./IBT v. BNSF Ry. Co.*, Case No. 11-cv-8211, 2012 U.S. Dist. LEXIS 82848 (N.D. Ill. June 12, 2012) (holding that the award could not be enforced where one of the outstanding issues was BNSF's entitlement to offset outside earnings); *Johnson v. CSX Transp. Co.*, Civil No. WDQ-10-0777, 2011 U.S. Dist. LEXIS 73934 (D. Md. June 30, 2011) ("courts may not interpret awards that are unclear about payment calculation"); *Miller v. Chicago & N.W. Transp.*, No. 88 C 6567, 1988 U.S. Dist. LEXIS 14099 (N.D. Ill. Dec. 9, 1988) (dispute over calculation of back pay must be remanded to board); *BRC v. St. Louis-San Fran. Ry.*, 334 F. Supp. 764, 767 (W.D. Mo. 1971)

(same); *UTU v. Patapsco & Back Rivers R.R.*, 327 F. Supp. 608, 616-17 (D. Md. 1971) (remanding dispute over calculation of back pay, including deductibility of outside earnings).

Likewise, in *Brotherhood of Railroad Signalmen v. Union Pacific*, the parties had a dispute over the meaning of an award that required the claimant "be made whole." No. 04 C 4196, 2004 U.S. Dist. LEXIS 25345 (N.D. Ill. Dec. 15, 2004). In particular, they disagreed over whether the award – which was silent on the question – required some element of overtime pay. *Id*. at *3. The court remanded the dispute to the arbitrator, noting that while both sides offered support for their interpretations, "there is no evidence that gives this court a clear, undisputed indication of what the Board meant when they ordered that [the claimant] 'be made whole.'" *Id*. at *11. Thus, the arbitrator, not the court, had to be given the opportunity to resolve the issue.

Another example of a post-award remedy dispute is *UTU v. Terminal Railroad Association of St. Louis*. There, the union sought to "enforce" an award under § 3 First (p), arguing that the railroad had refused to return an employee to duty as ordered. *U.T.U. v. Terminal R.R. Assn.*, 2000 WL 1724212, at *1-2 (S.D. Ill. Sept. 14, 2000). The carrier pointed to provisions in the award that qualified the employee's right to return on physical fitness for duty, arguing that this gave rise to a minor dispute. *Id*. at *2. The district court agreed with the railroad. It noted that the "arbitrator made no finding as to [the employee's] fitness to return to work and that the court "[was] not the proper venue for that determination." U.T.U, 2000 WL 1724212, at *3  The court therefore held that "the issue presented is a minor dispute under the [RLA] and that the court is therefore without jurisdiction to determine whether post-award conduct is a violation of the award." *Id., see also, e.g.*, *Ciarleglio v. Metro-North R.R.*, Civil Action No. 3:05cv1731 (SRU), 2008 U.S. Dist. LEXIS 2557 at * 12-13 (D. Conn. Jan. 14, 2008) ("The determination whether post-award conduct constitutes a violation of the award is

considered a 'minor' dispute under the RLA and thus outside the jurisdiction of the district courts.").

More generally, it is well settled that arbitrators, not courts, decide questions of remedy. For example, in *Walsh v. Union Pacific Railroad*, a Board ordered the reinstatement of an employee discharged for being absent without leave, but it declined to award the employee back pay or benefits. *Walsh v. Union Pac. R.R*, 803 F.2d 412, 413 (8th Cir. 1986). The employee convinced a district court to set aside the award. The Eighth Circuit reversed. In doing so, it noted that while the arbitrator is granted wide latitude in virtually all cases, "[t]his is especially true when it comes to formulating remedies. There, the need is for flexibility in meeting a wide variety of situations." *Id.* at 414 (quoting *United Steelworkers of Am. v. Enter. Wheel*, 363 U.S. 593, 597 (1960)).[1] For a court to assume what an arbitrator must have meant with respect to remedy – rather than sending the question back for clarification – is improper.[2] Thus, this Court is not the proper venue for the determination of minor disputes. Rather, Mr. Smith should avail himself of the available remedies under the RLA and this Court should dismiss Mr. Smith's Complaint for lack of subject matter jurisdiction.

---

[1] S*ee also, e.g., Union Pac. Railroad v. UTU,* 23 F.3d 1397, 1399 (8th Cir. 1994) (affirming the district court and noting that "the Board did not exceed its jurisdiction in fashioning a remedy. . . ."); *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 710 (7th Cir. 1994) ("It is commonplace to leave the arbitrators pretty much at large in the formulation of remedies, just as in the formulation of the principles of contract interpretation."); *International Ass'n of Machinists and Aerospace Workers v. Northwest Airlines,* 858 F.2d 427, 432 (8th Cir. 1988) (noting that arbitrator has power to craft remedy); *American Train Dispatchers Ass'n v. Norfolk & W. R.R.,* No. 90 C 3564, 1991 U.S. Dist. LEXIS 7017 *9-*10. (N.D. Ill. May 21, 1991) ("Because it is the task of an arbitrator to fashion remedies, the Board has the power to determine whether to provide a remedy, and "the amount of [such an] award is final absent a jurisdictional defect."); *cf. also Dexter Axle Co. v. IAMAW*, 418 F.3d 762, 768 (7th Cir. 2005) (arbitrators must be afforded "flexibility when formulating remedies. * * * The arbitrator's authority to interpret and find a breach of the agreement implies the authority to prescribe a remedy to cure the breach.")

[2] To the extent *Bhd. of Locomotive Eng'rs & Trainmen v. BNSF Ry. Co*., 549 Fed.Appx. 780 (10th Cir. 2013) is inapposite, it is wrongly decided. In that case, the Court erroneously held that the Conrail line of authority was inapplicable because the parties were not disputing their CBA. This was incorrect. Both disputes center entirely on the parties' CBA—specifically, on whether its provision for "time lost" permits BNSF to offset outside earnings.

**C.  The Present Suit Involves a Minor Dispute and the Court Lacks Subject-Matter Jurisdiction.**

Mr. Smith's contention that the railroad has refused to comply with an arbitration award is actually a dispute concerning BNSF's interpretation and application of the parties' collective bargaining agreement.  However, so long as BNSF's interpretation and application of the award is at least "arguably justified," Mr. Smith's claim must be treated as a "minor dispute" under the RLA.  *Conrail*, 491 U.S. at 306-307.  In *Conrail*, the Supreme Court noted that the "arguably justified" test is a "relatively light burden" for establishing exclusive RLA jurisdiction.  *Id.*  To be sure, a railroad's position is "arguably justified" if it is consistent with the railroad's past practice, supported by arbitral authority, or supported by the text and negotiating history of the collective bargaining agreement.  In applying the *Conrail* test, a court should assess the sufficiency of the carrier's interpretation in light of any source that an arbitrator might employ.  Thus, courts routinely examine a variety of factors, beyond just the text, including the "parties' 'practice, usage and custom,'" analogous agreements, analogous arbitration awards, and the like.  *Id.*, 491 U.S. at 312 (finding that a railroad's position was arguably in part because its position was consistent with past practice); *Bhd. of Maint. of Way Employees Div./IBT v. Norfolk S. Ry.*, 745 F.3d 808, 814 (7th Cir. 2014) (finding that a railroad's position was "arguably justified" in part because it was consistent with "the parties' past practices"); *Bhd. of Maint. of Way Employees Div./IBT v. BNSF Ry. Co.*, 596 F.3d at 1224-25 (finding that the railroad's position was "arguably justified" by past practice, arbitration decisions, and the CBA itself).

Both the general state of NRAB arbitral authority and an award specifically interpreting the agreement at issue support BNSF's position that railroads may apply an offset unless specifically prohibited from doing so.  These authorities – which span a wide variety of railroads, unions, and agreements – consistently hold that the common-law principles of offset and double

recovery apply to arbitral remedies under the RLA. (*See* Ex. D, Yeck Decl. ¶8, & Tab 6-1 through 6-8). An arbitrator could easily conclude, based on these awards, that it is appropriate to allow the railroad to apply an offset even though the issue was not expressly addressed in the original award. Indeed, on November 29, 2012, Referee Clauss issued an interpretation in connection with a series of disputes between BNSF and another union over whether offset is proper. In holding that it is, Arbitrator Clauss provided five reasons for his ruling, at least two of which are equally applicable to Mr. Smith's case:

> First, there is no specific contract provision which prohibits the Carrier from offsetting outside earnings from back pay awards. The point the Organization misses is that absent such prohibitive language (which, if it existed, we would be bound to follow), this Board's authority to formulate remedies is discretionary.
>
> ****
>
> Second, it has long been held that were a contract violation has been shown, the purpose of a remedy is to restore the status quo ante and to make any adversely affected employees whole . . . .[A] windfall for the employee . . . is directly contrary to the function of a remedy which seeks to restore the status quo ante and make the adversely affected employee whole.

(*See* Ex. D, Yeck Decl. Tab 6-2 at 3-4).

BNSF can also rely on Award 26368 of the First Division of the NRAB. That award resolved a dispute under the exact same CBA – between the BLET and BNSF concerning the former CB&Q property – that is at issue here. (*See* Ex. D, Yeck Decl. Tab 6-1). The arbitrator in Award 26368 held that offset is entirely proper under the CB&Q Agreement. (*Id.*) Even if the union were able to point to conflicting awards, the authority that supports BNSF is easily enough to make this issue for the arbitrator to resolve. *See Bhd. of Maint. of Way Employees v. Burlington N. R.R.*, 24 F. 2nd 937, 940 (7th Cir. 1994) (question of how much weight to give arbitral precedent is itself an issue for RLA arbitrators to decide). Hence, dismissal in favor of the NRAB is proper.

**D. Alternatively, the Parties' Dispute Should be Remanded to the Board as it Requires Interpretation of the Award.**

BNSF alternatively asserts that the meaning of the Award is ambiguous and requires interpretation by the NRAB. There is ample judicial authority for remanding a case where there is a dispute over post-award compliance.

In a similar case, a federal district court remanded a dispute between BNSF and a different union about the proper calculation of a back-pay award. *Bhd of Maint. of Way Employees Div./IBT v. BNSF Ry. Co.,* 2012 U.S. Dist. LEXIS 82848. The union had sought— and failed—to enforce the arbitration award. The union claimed that BNSF had violated an arbitration award by calculating the employee's back-pay award to include an offset for interim earnings. The court agreed with BNSF that the award was ambiguous stating that:

> BNSF also asserts that the Board's "make whole" language is ambiguous. Specifically, BNSF contends that it is arguably entitled to deduct compensation received by Johnston from outside sources during the period between termination and reinstatement and points to Board interpretations consistent with this contention. Again, the Court agrees that BNSF's position is at least arguable under the language of the award. That is, the phrase 'any and all losses' could reasonably exclude other compensation, especially as the Board has previously interpreted similar language in this way.

*Id.* at *7.

Having determined that the award could not be enforced as the union requested, the only remaining question before the court was "whether to dismiss the case or remand it to the Board." *Id.* at *8. The court held that because the dispute centered on the language of the award, remand to the public law board was appropriate. *Id*. To reach that conclusion, the court relied on, *Atchison*, cited above, which held that if there is doubt about whether a dispute over post-award compliance is (1) a "new" dispute or (2) a question of interpretation, the proper course is to

remand the matter to the original arbitration panel and let that body sort it out. *Atchison*, 956 F.2d at 160-61.

In the instant case, the Awards do not prohibit any offset of outside earnings. The Award only states that he is to be reinstated and that the claim was "sustained." (Ex. C, Dkt. No. 1, Pl.'s Pet. Ex. 1 at 3). To "enforce" the Awards as written, this Court would necessarily "implicitly interpret" the Awards in the manner prescribed by Mr. Smith. See *Atchison,* 956 F.2d at 160. Yet, as the precedent above explains, a court may not implicitly interpret an ambiguous award. Accordingly, this Court should remand the Awards to the NRAB for clarification.

## IV. CONCLUSION

Mr. Smith's Petition should be dismissed for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Alternatively, because this dispute involves interpretation of the Awards, it should be remanded to the NRAB for adjudication.

                                       Respectfully submitted,

                                       BNSF RAILWAY COMPANY

                                       /s/ Heather R. Adams_____
                                       One of its Attorneys

Raymond H. Groble, III
Heather R. Adams
Daley Mohan Groble, P.C.
55 West Monroe St., Suite 1600
Chicago, Illinois 60603
groble@daleymohan.com
hadams@daleymohan.com

# CERTIFICATE OF SERVICE

The undersigned hereby certified that on February 22, 2016, the foregoing DEFENDANT BNSF RAILWAY COMPANY'S MOTION TO DISMISS PLAINTIFF'S PETITION FOR LACK OF SUBJECT-MATTER JURISDICTION was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice of the filing to the registered attorneys of record in this matter indicated below:

Anthony W. Smith
*Pro Se* Plaintiff
900 Hull Avenue
Westchester, Illinois 60154
(708) 651-6179

/s/ Heather R. Adams