# EXHIBIT C



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ANTHONY W. SMITH,

Anthony W. Smith

Plaintiff/Petitioner

} **Civil Action File**
} **No:**

1:16-cv-01078
Judge Edmond E. Chang
Magistrate Judge Susan E. Cox

vs.

}

BNSF RAILWAY COMPANY,

Defendant/Respondent.

**FILED**

JAN 2 5 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## PETITION TO ENFORCE BACK PAY AND Benefit PROVISION IN

## NATIONAL RAILROAD ADJUSTMENT BOARD ORDERS

Plaintiff/Petitioner Anthony W. Smith against Defendant/Respondent, Burington Northern Sante Fe Railway Company (hereinafter "BNSF") alleges as follows:

### PARTES AND JURISDICTION

1. Plaintiff Anthony W. Smith resides in the state of Illinois. Plaintiff currently works for the BNSF.

2. BNSF is a corporation which is organized under the laws of Delaware and is qualified to do business in Illinois. The U.S. District Court for the Northern District of Illinois Eastern Division is a district through which the BNSF operates as a railway carrier, as well as operating as a railway in other states.

3. This Court has original jurisdiction of this matter as a federal question, U.S.C. §1331, specifically pursuant to the Railway Labor Act (hereinafter "RLA"), 45 U.S.C. §151, *et seq.* This Petition is brought pursuant 45 U.S.C. §153 First (p) which makes this Petition a civil action arising under a law of the United States. This statutory provision states that when a carrier such as BNSF does not comply with an order of an award of a division of the National Railroad Adjustment Board (hereinafter "NRAB") within the limit in such order, a petitioner, or any person for whose benefit the order was made, may file a petition in US. district court which sets forth briefly the cause for which he claims relief and which includes the Order of a division of the NRAB.

4. Venue in this Court is authorized in 45 U.S.C. §153 First (p) which says the petitioner, or any person for whose benefit the order was made, may file the petition "in the District Court of the Untied States for the district in which he resides, or in which is located the principal operating office of the carrier, or through which the carrier operates."

## STATEMENT OF CLAIM/PETITION
## ENFORCEMENT OF BACK PAY AND BENEFITS PROVISION IN AWARD
## BY THE FIRST DIVISION OF THE NRAB

5. Petitioner re-alleges and reincorporates by reference each and every allegation contained in ¶1-4 of this Petition.

6. Petitioner asks the Court to enforce the back pay and benefits provision in Award No. 28142 and Award 28141. The awards, which the First Division of the NRAB issued on November 25, 2014, relate to two separate disciplinary actions involving A.W. Smith (hereinafter, "Mr. Smith"), an engineer who is a member of BLET and was employed by BNSF Illinois. The claim in Award No. 28142 arose when BNSF sent Petitioner Smith a notice dated June 6, 2011 alleging he violated a rule on June 2, 2011. BNSF did not conduct the Investigation (hearing) on this allegation until May 22, 2012. BNSF then terminated him effective June 6, 2012. In the meantime, BNSF had sent Mr. Smith a notice dated March 15, 2012 alleging a second rule violation which occurred on March 13, 2012. BNSF conducted an investigation on the

second violation on November 7, 2012 and issued another notice of termination November 26, 2012.

7.  The First Division of the NRAB issued two awards on November 25, 2014, and they are necessarily included in one Petition because the parties were the same (BLET and BNSF) in both proceedings; the employee (Mr. Smith) was the same; and the Board ordered the same remedies, to wit: (1) it sustained BLET's claims requesting Mr. Smith receive "pay for all time lost without deduction of outside earnings;" and (2) it sustained BLET's claims requesting Mr. Smith's reinstatement, however, the Board placed conditions on the reinstatement, saying as follows in both awards: Consequently the Board orders that prior to returning the Claimant to service the Carrier has the right to test and retrain the Claimant with respect to his abilities as a Locomotive Engineer, as well as to evaluate his fit ness to operate in that capacity. Only after those tests are completed to the satisfaction of the Carrier must the Claimant be returned to service.

Both include the same statements on the Board awards:

**AWARD**
Claim sustained in accordance with the findings.
Both awards also include the same statements on the Board's orders:

**ORDER**
**This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made. The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.**

**Award No. 28142 is attached as Exhibit 1 to this petition, and Award No. 28141 is attached as Exhibit 2.**

8. The claim in Award No. 28142 arose out of a BNSF notice dated June 6, 2011 directing Mr. Smith to report for an Investigation on the charge that on June 2, 2011 he allegedly passed a signal displaying a stop indication by about 90 feet. After three postponements, BNSF conducted the Investigation nearly a year later, on May 22, 2012 where Mr. Smith participated. BNSF in a letter, dated June 6, 2012 notified Mr. Smith that as a result of the investigation, he had been found guilty as charged and was being dismissed effective immediately.

9. BLET then perfected a proceeding before the NRAB for final and binding arbitration of BNSF's termination of Mr. Smith. BLET's Statement of Claim in Award No. 28142 said as follows:

> It is hereby requested that Engineer A. W. Smith's discipline be reversed with seniority unimpaired. Requesting pay for all time lost, **without deduction of outside earnings,** including the day(s) for investigation, with restoration of full benefits and that the notation dismissal be removed from his personal record, resulting from investigation held May 22, 2012. (Emphasis added)

10. Award No. 28142 Includes the Board's characterization of the parties' contentions. The Award says BNSF contended the Board should deny the claim "in its entirety" because (1) substantial evidence including Mr. Smiths' admissions, established he was guilty as charged; (2) his admission of guilt didn't absolve him from culpability; (3) his Agreement rights weren't compromised when there was confusion about the location of the Hearing that resulted in a postponement; and (4) the discipline imposed was consistent with the Carrier's Policy for Employee Performance Accountability. BNSF additionally contended that the parties' agreement contemplated deduction of outside earnings from any award of pay for time lost.

11. The award says BLET contended the Board should sustain the claim "in its entirety, without deduction for outside earnings," because (1) BNSF failed to provide Mr. Smith with a fair and impartial Hearing, (2) BNSF's conducting officer and representatives failed to appear at the Hearing scheduled in March 2012, (3) there was no mutual agreement to

postpone the March 2012 Hearing and (4) the discipline imposed was excessive and unduly harsh.

12. In its discussion on the parties' contentions, the Board says in Award No. 28142, that BNSF on June 6, 2011 issued the charges against Mr. Smith and the investigation was postponed and rescheduled for March 22, 2012. The award says BNSF's representatives didn't appear for the Investigation on the scheduled date, so Mr. Smith, his fellow crew members, and their representatives, who had appeared on the scheduled date, then left. The Award also says BNSF didn't get any additional extensions from BLET, and the Hearing originally scheduled for March 22, 2012 was later scheduled on May 18, 2012, as a "make-up" Investigation to be held on May 22, 2012. The Award says "[s]tated differently, there was no mutual agreement between the Carrier and the Organization to reschedule the hearing for May 22, 2012."

13. The Board rejected BNSF's argument that the parties had agreed to continue the hearing until May 2012 because the parties had agreed on previous continuances of the Investigation, saying:

The parties' Agreement guarantees a prompt Hearing for all disciplinary cases. Hearing dates are often extended by agreement of the parties. In this case, however the Conducting Officer and other Carrier officers failed to report for the Hearing in accordance with the agreed-upon extension from the Organization. Consequently, the Hearing that ultimately took place was not held in a timely fashion in compliance with the parties' Agreement. As a result, the Board has no choice other than to sustain the claim.

14. Award No. 28142 notes that a companion case also involved Mr. Smith being dismissed for passing a signal displaying a stop indication a second time.

15. The companion case, Award N. 28141, contains the same "Statement of Claim" as in Award No. 28142, requesting "pay for all time lost, without deduction of outside earnings," but requests notation of dismissal be removed from the investigation on November 7, 2012. The award says BNSF by a notice dated March 15, 2012 directed Mr. Smith to report for a formal investigation on charges that on March 13,

2012 he allegedly passed a signal displaying a stop indication. After two postponements, BNSF conducted the investigation on November 7, 2012, although Mr. Smith, (who at this point had been terminated) did not receive notice and was not present. The Award says BNSF by letter dated November 26, 2012 notified Mr. Smith that as a result of the investigation, he had been found guilty as charged and dismissed.

16. After both awards were issued on November 25, 2014, BLET wrote a letter to BNSF dated December 10, 2014 regarding the award of back pay. The letter is Exhibit 3 to this petition. The BLET letter said Awards No. 28141 and No. 28142 had reinstated Mr. Smith [on the conditions set out in the Awards] and sustained the claim for back pay for all time, lost without offset for outside earnings. The BLET cited the recent decision of the Tenth Circuit of the U.S. Court of Appeals in *Brotherhood of Locomotive Engineers and Trainmen, John W. Hylan v. BNSF Railway Company,* 120913 FED10, No. 13-8025, (December 9,2013), 549 F. App'x 780 (2013) and concluded. "we again expect payment to Engineer A. W. Smith for all time lost without offset for outside earnings in the case at hand." The Tenth Circuit decision is Exhibit 4 to this petition.

17. BNSF replied on December 22, 2014 saying, in part, "[t]he Claimant must first complete all return to work requirements to the satisfaction of the Carrier. Additionally, before we even begin to consider the subject of back pay, the Claimant must be able to prove that he was medically eligible during the period in question." The BNSF letter is Exhibit 5 to this petition.

18. BNSF issued two other letters on December 22, 2014. BNSF wrote the NRAB regarding the remedy portions of the two awards, noting that Peter Meyers sat as Referee in both cases. The letter, which is Exhibit 6 to this petition, says, in part:

> Specifically, the Organization is representing that (1) BNSF is improper in its practice of offsetting monies awarded with outside earnings (despite prior practice and on-property arbitral support) and (2) Referee Meyers' clear intent in that Award was to preclude any outside earnings offset and (3) Referee Meyers' clear intern that Claimant would be required to prove he was medically able to work for the time period in question.

The Carrier requests an interpretation to both Awards 28142 and 28141 for the Referee to clarify whether the Award states any position on offset, and the proper remedy to be applied therein.

The BNSF request for a Board interpretation on the offset issue tries to revive arguments it had already raised and lost in its submissions to the Board.

19. The second letter BNSF wrote on December 22, 2014 was addressed to Mr. Smith. The letter is Exhibit 7 to this petition. The letter begins with, "[t]his is a reinstatement with seniority and benefits restored and with pay for time lost based on Awards 28141 and 28142 of the NRAB 1st Division . Pay for time lost will be offset by outside earnings, monies due RRB and/or employee paid Health & Welfare premiums. "The letter went on to say BNSF was beginning the reinstatement process, and it gave instructions on how Mr. Smith would have to comply with conditions for reinstatement.

20. This Petition relates only to the back pay provision which appears in each award. In both proceedings before the Board, the parties contended each claim should be sustained or denied "in its entirety." The Board awards sustained BLET claims in entirety and said, "[the Carrier] is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties." BLET is not asking the court to enforce the reinstatement provision because the reinstatement process is still underway, but it is asking the Court to enforce the back pay and benefits provision, without any deduction for outside earnings. Because the Board placed no preconditions on the award of back pay.

21. Petitioner further asks the Court to order BNSF to comply immediately with the Board orders. The Board issued the orders on November 25, 2014 to be make effective on or before 30 days following the postmark date the award were transmitted to the parties. BNSF has still not complied with the award of back pay and all benefits. Moreover, it insists it won't even consider giving Mr. Smith his back pay until he has demonstrated he was medically eligible during the period in question. The BNSF correspondence is written as if had not lost both cases

before the board. Its letter to Mr. Smith on December 22, 2014 (Exhibit 7) says that he will receive back pay, but it will be offset by outside earnings while he was terminated. But, on the same day, in its letter to BLET (Exhibit 5) on the offset issue it said, "[t}he Claimant must first complete all return to work requirements to the satisfaction of the Carrier. Additionally before we even begin to consider the subject of back pay, the Claimant must be able to prove he was medically eligible during the period in question." The awards sustained BLET's claims for back pay *without offset and without any other conditions.* BNSF has no justification to apply an offset or to impose any conditions on the back pay award. The only conditions in the awards, as quoted above, apply to Mr. Smith's reinstatement.

22. The Collective Bargaining Agreement between BLET and BNSF doesn't contain any provision on an offset against a NRAB award of back pay. (See Exhibit 4 to this Petition, *Brotherhood of Locomotive Engineers and Trainmen, John W. Hylan v. BNSF Railway Company, 120913FED10, No.13-8025,* at page 9(December 9, 2013, 549F App'x780)). Thus neither the Board awards nor the Collective Bargaining Agreement justify BNSF's refusing to pay Mr. Smiths' back pay without a reduction for outside earnings nor do they justify BNSF for asking the Board for interpretation on an issue it has already submitted and argued to the Board. The parties in Award No. 28142 and No. 28141 agreed, for the sake of brevity, that each would provide one supplemental submission to the Board on the offset issue. The BLET submission on the offset issue is Exhibit 8 to this Petition, and the BNSF submission is Exhibit 9. Thus, when the Board made its decisions in Award No. 28142 NS NO. 28141, it had before it the parties' written submissions on the offset issue.

23. It is well settled law that if a Board order is ambiguous, the Court should remand for a Board interpretation. However, as in the case of *Denver & Rio Grande Western Railroad Co. v. Blackett, 538F.2d 291, 294(10th Cir. 1976)* even if an award was terse and merely stated "Claim sustained," it was unambiguous and enforceable because it was "positive in its form" and "its effect was unmistakable."

24. The RLA at 45 U.S.C. §153 First (p) provides that if the petitioner seeking enforcement of a Board order shall finally prevail, he shall be allowed a reasonable attorney's fee, to be taxed and collected as part

of the costs of the suit. This statutory provision also specifies that a NRAB order may not be set aside except for failure of the division to comply with requirement of Chapter 8 of the RLA, for failure to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

Wherefore, Petitioner prays that this Court to enter an Order granting the following relief:

a. Order BNSF to give Mr. Smith his back pay without any reduction for Mr. Smith's outside earnings while he was terminated, as ordered by the NRAB;
b. Grant Plaintiff/Petitioner's attorney's fees and costs; and
c. Grant any further relief which may be equitable and just.

DATED THIS _25_ day of January 2016

Anthony W. Smith

900 Hull Avenue

Westchester, Illinois 60154

(708) 651-6179

## Exhibits

1) Award No. 28142
2) Award No. 28141
3) Blank
4) U.S. Court of Appeals BLET, John W. Hylan V. BNSF
5) Blank
6) BNSF letter to NRAB
7) BNSF reinstatement letter to A.W. Smith
8) Letter to BLET GCA Jerry LaPrath
9) Letter to BLET National President Dennis Pierce
10) Letter from BLET National President Dennis Pierce
11) Letter to BLET National President Dennis Pierce
12) Letter from BLET National President Dennis Pierce
13) Letter to BLET National President Dennis Pierce
14) Letter from BLET GCA Jerry LaPrath
15) Letter to BLET GCA Jerry LaPrath
16) Letter from BLET National President Dennis Pierce
17) Letter to BLET GCA Jerry LaPrath
18) Letter to BLET National President Dennis Pierce
19) Letter from BLET National President Dennis Pierce
20) Letter to BLET National President Dennis Pierce
21) Letter to BLET GCA Matt Wilson
22) U.S. District Court District of Wyoming (Cheyenne)
23) Railroad Labor Act (RLA) Title 45- U.S.C. Sections 151-188 pg. 38 and pg. 39

# EXHIBIT
# 1



# Brotherhood of Locomotive Engineers and Trainmen

### GENERAL COMMITTEE OF ADJUSTMENT
#### BURLINGTON NORTHERN SANTA FE – MONTANA RAIL LINK

*VICE CHAIRMEN*
**JERRY LAPRATH**
**KENT PSOTA**
**MATT BRANDT**

*SECRETARY-TREASURER*
**JIM H. NELSON**
4237 ORCHARD DRIVE
GALESBURG, IL 61401

**MATT O. WILSON**
*GENERAL CHAIRMAN*

1716 WESTERN CENTER BOULEVARD
FT. WORTH, TX 76131
TEL (817) 338-9010 • FAX (817) 338-9088

December 4, 2014

Anthony W Smith
900 Hull Ave.
Westchester, Illinois 60154

Certified Mail # 7006 2760 0002 5281 9117

Dear Sir and Brother:

This is in reference to your discipline case that was heard before the First Division. Award No.'s 28141 and 28142 both sustained your claims per the findings. Enclosed you will find a copy of the Awards.

The Arbitrator sustained the claims per the findings, stating,

> *"The Board notes that First Division Award 28141 involved the Claimant's November 26, 2012 dismissal from service for having passed a signal displaying a stop indication on March 13, 2012. As in that case, a review of the transcript in the instant case makes clear that the Claimant has medical problems that adversely impact his performance as a Locomotive Engineer. Consequently, the Board orders that prior to returning the Claimant to service, the Carrier has the right to test and re-train the Claimant with respect to his abilities as a Locomotive Engineer, as well as evaluate his medical fitness to operate in that capacity. Only after those tests are completed to the satisfaction of the Carrier must the Claimant be returned to service."*

If you have any further questions, please do not hesitate to contact this office.

Sincerely,

*Jerry LaPrath*

Jerry LaPrath
Vice Chairman

Cc: BLET Local Chairman Division 32

Form 1         NATIONAL RAILROAD ADJUSTMENT BOARD
FIRST DIVISION

Award No. 28141
Docket No. 48009
14-1-NRAB-00001-130405

The First Division consisted of the regular members and in addition Referee Peter R. Meyers when award was rendered.

PARTIES TO DISPUTE:  (Brotherhood of Locomotive Engineers and Trainmen
(
(BNSF Railway Company

STATEMENT OF CLAIM:

> "It is hereby requested that Engineer A. W. Smith's discipline be reversed with seniority unimpaired. Requesting pay for all time lost, without deduction of outside earnings, including the day(s) for investigation, with restoration of full benefits and that the notation dismissal, be removed from his personal record, resulting from investigation held on November 7, 2012."

FINDINGS:

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.

By notice dated March 15, 2012, the Claimant was directed to report for a formal Investigation on charges that he allegedly passed a signal displaying a stop indication on March 13, 2012. The Investigation was conducted, after two postponements, on November 7, 2012. By letter dated November 26, 2012, the Claimant was notified that as a result of the Investigation, he had been found guilty as charged and was being dismissed from the Carrier's service.

Form 1　　　　　　　　　　　　　　　　　　　　　　　Award No. 28141
Page 2　　　　　　　　　　　　　　　　　　　　　　　Docket No. 48009
　　　　　　　　　　　　　　　　　　　　　　14-1-NRAB-00001-130405

The Carrier contends that the claim should be denied in its entirety because (1) substantial evidence establishes that the Claimant is guilty as charged, (2) there is no merit to the Organization's procedural arguments, and (3) the discipline imposed is consistent with the Carrier's Policy for Employee Performance Accountability (PEPA) and in keeping with the seriousness of the violation. Without prejudice to its position on the merits, the Carrier additionally contends that the parties' Agreement contemplates the deduction of outside earnings from any award of pay for time lost.

Conversely, the Organization contends that the claim should be sustained in its entirety, without deduction for outside earnings, because (1) the Carrier failed to provide the Claimant with a fair and impartial Hearing by reason of the fact that it was held in absentia without the Claimant having been properly notified of the impending Investigation, (2) the Carrier failed to prove the charges, (3) the Carrier failed to give due credit for the Claimant's many years of service, and (4) the discipline imposed was excessive and unduly harsh.

The Board reviewed the procedural arguments raised by the Organization, and finds that the Carrier failed to properly notify the Claimant of the Investigation in the matter. As a result, the Hearing was held in absentia and the Claimant had no ability to defend himself against the charges.

The Rules are clear as the parties have agreed that claimants will receive notice of and will be given an opportunity to attend a Hearing. The Claimant in this case was not properly notified of the Hearing and, therefore, the Board must find that the Investigation that was held in absentia was not fair and impartial and the Claimant's Agreement due-process rights were not respected. As a result, the Board has no choice other than to sustain the claim.

It is important to note, however, that the record in this case – as well as the record evidence in companion Award 28142 which involved another dismissal from service as a result of an identical Rules violation on June 2, 2011 – makes clear that the Claimant has medical problems that adversely impact his performance as a Locomotive Engineer. Consequently, the Board orders that prior to returning the Claimant to service, the Carrier has the right to test and re-train the Claimant with respect to his abilities as a Locomotive Engineer, as well as evaluate his medical fitness to operate in that capacity. Only after those tests are completed to the satisfaction of the Carrier must the Claimant be returned to service.

Form 1                                              Award No. 28141
Page 3                                              Docket No. 48009
                                                   14-1-NRAB-00001-130405

## AWARD

Claim sustained in accordance with the Findings.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made. The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 25th day of November 2014.

# EXHIBIT
# 2

Form 1         **NATIONAL RAILROAD ADJUSTMENT BOARD**
**FIRST DIVISION**

Award No. 28142
Docket No. 48036
14-1-NRAB-00001-130404

The First Division consisted of the regular members and in addition Referee
Peter R. Meyers when award was rendered.

(Brotherhood of Locomotive Engineers and Trainmen
**PARTIES TO DISPUTE:** (
(BNSF Railway Company

**STATEMENT OF CLAIM:**

"It is hereby requested that Engineer A. W. Smith's discipline be
reversed with seniority unimpaired. Requesting pay for all time lost,
without deduction of outside earnings, including the day(s) for
investigation, with restoration of full benefits and that the notation
dismissal, be removed from his personal record, resulting from
investigation held on May 22, 2012."

**FINDINGS:**

The First Division of the Adjustment Board, upon the whole record and all the
evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute
are respectively carrier and employee within the meaning of the Railway Labor Act,
as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute
involved herein.

Parties to said dispute were given due notice of hearing thereon.

By notice dated June 6, 2011, the Claimant was directed to report for a
formal Investigation on charges that he allegedly passed a signal displaying a stop
indication by about 90 feet on June 2, 2011. The Investigation was conducted, after
three postponements, on May 22, 2012. By letter dated June 6, 2012, the Claimant
was notified that as a result of the Investigation, he had been found guilty as
charged and was being dismissed from the Carrier's service.

Form 1
Page 2

Award No. 28142
Docket No. 48036
14-1-NRAB-00001-130404

The Carrier contends that the claim should be denied in its entirety because (1) substantial evidence, including the Claimant's admissions, establish that he is guilty as charged, (2) the fact that the Claimant admitted to his transgressions does not absolve him from culpability, (3) the Claimant's Agreement rights were not compromised when there was confusion about the location of the Hearing that resulted in a postponement, and (4) the discipline imposed is consistent with the Carrier's Policy for Employee Performance Accountability (PEPA) and in keeping with the seriousness of the violation. Without prejudice to its position, the Carrier additionally contends that the parties' Agreement contemplates the deduction of outside earnings from any award of pay for time lost.

Conversely, the Organization contends that the claim should be sustained in its entirety, without deduction for outside earnings, because (1) the Carrier failed to provide the Claimant with a fair and impartial Hearing, (2) the Carrier's Conducting Officer and representatives failed to appear at the Hearing scheduled in March 2012, (3) there was no mutual agreement to postpone the March 2012 Hearing, and (4) the discipline imposed was excessive and unduly harsh.

The Board reviewed the procedural arguments raised by the Organization, and finds that the Carrier failed to hold the Investigation in a timely manner and, therefore, the claim must be sustained.

The record reveals that on June 6, the Carrier issued charges against the Claimant for passing a signal displaying a stop indication on June 2, 2011. The Investigation was postponed and rescheduled to take place on March 22, 2012. The record reveals that when Carrier representatives did not appear for the Investigation scheduled for that day, the Claimant and his fellow crew members and representatives left the Hearing location. The record also indicates that the Carrier did not obtain any additional extensions from the Organization, and the Hearing was later scheduled as a "make up" Investigation on May 18 to be held on May 22, 2012. Stated differently, there was no mutual agreement between the Carrier and the Organization to reschedule the Hearing for May 22, 2012.

Although the Carrier argues that because the parties had agreed on previous continuances of the Investigation, the parties were in agreement that the Hearing could be continued until May 2012. However, that argument does not hold water.

Form 1
Page 3

Award No. 28142
Docket No. 48036
14-1-NRAB-00001-130404

The parties' Agreement guarantees a prompt Hearing for all disciplinary cases. Hearing dates are often extended by agreement of the parties. In this case, however, the Conducting Officer and other Carrier officers failed to report for the Hearing in accordance with the agreed-upon extension and failed to then obtain an additional agreed-upon extension from the Organization. Consequently, the Hearing that ultimately took place was not held in a timely fashion in compliance with the parties' Agreement. As a result, the Board has no choice other than to sustain the claim.

There is one other issue that must be resolved by the Board. The Board notes that First Division Award 28141 involved the Claimant's November 26, 2012 dismissal from service for having passed a signal displaying a stop indication on March 13, 2012. As in that case, a review of the transcript in the instant case makes clear that the Claimant has medical problems that adversely impact his performance as a Locomotive Engineer. Consequently, the Board orders that prior to returning the Claimant to service, the Carrier has the right to test and re-train the Claimant with respect to his abilities as a Locomotive Engineer, as well as evaluate his medical fitness to operate in that capacity. Only after those tests are completed to the satisfaction of the Carrier must the Claimant be returned to service.

## AWARD

Claim sustained in accordance with the Findings.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made. The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.

NATIONAL RAILROAD ADJUSTMENT BOARD
By Order of First Division

Dated at Chicago, Illinois, this 25th day of November 2014.

# EXHIBIT
# 4

FILED
United States Court of Appeals
Tenth Circuit

December 9, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

BROTHERHOOD OF LOCOMOTIVE
ENGINEERS AND TRAINMEN;
JOHN W. HYLAN,

             Petitioners-Appellees,

v.

BNSF RAILWAY COMPANY,
a Delaware corporation,

             Respondent-Appellant.

No. 13-8025
(D.C. No. 2:12-CV-00277-ABJ)
(D. Wyo.)

---

## ORDER AND JUDGMENT[*]

---

Before **MATHESON**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

---

BNSF Railway Company appeals the district court's enforcement of an

arbitration order issued by the National Railroad Adjustment Board ("NRAB").

*See* 45 U.S.C. § 153 First (p). BNSF contends the NRAB's award was unenforceable

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

due to ambiguity about whether an award of back pay was subject to offset (i.e.,

reduction for outside compensation received), and thus the district court should have

remanded the case to the NRAB for resolution. We perceive no ambiguity and

accordingly affirm the district court's judgment.

## I. Background

John W. Hylan worked for BNSF as a locomotive engineer. When he was

fired for taking unauthorized leave, Mr. Hylan and his union, the Brotherhood of

Locomotive Engineers and Trainmen (collectively, "Union"), challenged the

dismissal before the NRAB, seeking reinstatement and back pay without offset for

outside earnings. In its brief to the NRAB, the Union stated its claim as follows:

> It is hereby requested that Engineer Hylan's discipline be reversed with
> seniority unimpaired, requesting pay for all time lost, *without deduction*
> *of outside earnings*, including the day(s) for investigation, with
> restoration of full benefits and that notation of dismissal on his personal
> record be removed, resulting from investigation held on September 29,
> 2009.

Aplt. App. at 17 (emphasis added, internal quotation marks omitted). In particular,

the Union argued that Mr. Hylan was entitled to back pay without offset for outside

wages earned during his period of dismissal. Although the Union acknowledged

BNSF's contrary position, it insisted the railroad had no "right to deduct outside

earnings from [Mr. Hylan's] back pay." *Id.* at 24.

For its part, BNSF defended its decision to fire Mr. Hylan and argued that if he

were reinstated, back pay should be denied and "any award for lost wages should be

offset with outside earnings and job insurance payments." *Id.* at 37. BNSF asserted,

- 2 -

moreover, that its "argument is not one of first impression" and "numerous awards recognize the Company's right to offset outside earnings." *Id.*

The NRAB ruled in favor of the Union. In its decision, the NRAB first reiterated the Union's statement of the claim verbatim. The NRAB then evaluated the parties' procedural and substantive arguments, stating, "The Board carefully reviewed the evidence and arguments in the instant case." *Id.* at 40. And in its penultimate paragraph, entitled, "AWARD," the NRAB stated: "Claim sustained." *Id.* at 42. The NRAB's final paragraph, entitled, "ORDER," provided: "This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made. The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties." *Id.*

After the NRAB issued its decision, BNSF requested that Mr. Hylan document his outside earnings made during the period of dismissal. According to BNSF, the award permitted the offset of Mr. Hylan's outside wages from his back pay award. The Union protested, but BNSF replied, "Unfortunately, BNSF's interpretation of the [NRAB] Award governing Mr. Hylan's reinstatement to service differs from the [Union's]." *Id.* at 45. The Union returned to the NRAB for an interpretation of the award, but before the NRAB responded, the Union withdrew its request and filed in the district court a petition to enforce the order. *See* 45 U.S.C. § 153 First (p).

- 3 -

In its petition, the Union argued that the NRAB order was unambiguous and enforceable as written. BNSF moved to dismiss, claiming the district court lacked jurisdiction to enforce the order. *See* Fed. R. Civ. P. 12(b)(1). BNSF asserted its disagreement over the meaning of the award was a "minor dispute" within the exclusive jurisdiction of the NRAB. Alternatively, BNSF asserted the award was ambiguous and should be remanded to the NRAB for clarification.

The district court denied BNSF's motion and enforced the award without any offset to Mr. Hylan's back pay. The court ruled that it had jurisdiction to enforce the order under 45 U.S.C. § 153 First (p) so long as the NRAB order required no interpretation. Because the order clearly defined the claim as seeking to preclude any deductions for outside earnings, and the NRAB unambiguously sustained that claim without qualification, the court reasoned that the order necessarily precluded any offset. BNSF appealed that ruling.

## II. Discussion

BNSF argues the district court lacked jurisdiction to enforce the NRAB's award. Building on its assertion that the award is ambiguous, BNSF contends that if its interpretation of the award is "arguable," then its disagreement over the meaning of the award constitutes a "minor dispute" that, under Supreme Court precedent, belongs only before the NRAB. *See Consol. Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 304-05 (1989) ("*Conrail*"). We review the district court's jurisdictional determination de novo, *Bhd. of Maint. of Way Emps. v. Burlington N.*

- 4 -

*Santa Fe Ry. Co.*, 596 F.3d 1217, 1221 (10th Cir. 2010), and conclude that the court properly enforced the award.

## A. Grounds for Review under the Railway Labor Act

The Railway Labor Act ("RLA") states that "[i]f a carrier does not comply with an order of a division of the [NRAB] within the time limit in such order, the petitioner . . . may file in the District Court" an application for enforcement of the award. 45 U.S.C. § 153 First (p). This provision gives district courts jurisdiction to enforce or set aside unambiguous NRAB awards. But we have recognized "that the range of judicial review in enforcement cases is among the narrowest known to the law and that the findings and order of the [NRAB] are conclusive." *Denver & Rio Grande W. R.R. Co. v. Blackett*, 538 F.2d 291, 293 (10th Cir. 1976) (discussing 45 U.S.C. § 153 First (p)). Although courts once had authority to review NRAB orders to the extent they contained money awards, *see Gunther v. San Diego & Ariz. E. Ry. Co.*, 382 U.S. 257, 260, 264 & n.3 (1965), the 1966 amendments to the RLA eliminated this authority and uniformly made NRAB orders, including those containing money awards, "'final and binding upon both parties to the dispute,'" *Bhd. of R.R. Trainmen v. Denver & Rio Grande W. R.R. Co.*, 370 F.2d 833, 835 (10th Cir. 1966) (quoting 45 U.S.C. § 153 First (m)); *see also Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970) (explaining that under 45 U.S.C. § 153 First (m), "awards are 'final and binding' upon the parties").

- 5 -

Coupled with these changes aimed at preserving the finality of NRAB awards, Congress also restricted the scope of judicial review. Under § 153 First (p), "an employee who obtained a monetary award against a carrier could sue to enforce it, and the court could either enforce the award or set it aside." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 74-75 (2009). But with the 1966 amendments, Congress limited the grounds on which an award could be set aside to only three: (1) the NRAB failed to comply with the requirements of the RLA; (2) the NRAB failed to conform or confine itself to matters within the scope of its jurisdiction; or (3) the NRAB was influenced by fraud or corruption. *Blackett*, 538 F.2d at 293. Absent one of these statutory grounds for review, district courts lack jurisdiction to consider the amount of an award. *See id.* at 294; *Denver & Rio Grande W. R.R. Co.*, 370 F.2d at 835.

Here, BNSF invokes none of the statutory grounds for review, and indeed, none apply. This would seem to foreclose the district court's jurisdiction to do anything but enforce the award, but BNSF contends these limited grounds on which an award may be set aside are irrelevant. According to BNSF, it is not seeking to set aside the NRAB's order but rather clarify "what the arbitrator intended with respect to offset." Reply Br. at 11. For this limited purpose, BNSF contends the RLA does not preclude the district court from remanding the case to the NRAB for clarification. This argument is unpersuasive, and our decision in *Blackett* explains why.

- 6 -

In *Blackett*, a railroad employee obtained an award from the NRAB, but the railroad successfully petitioned the district court for an offset. 538 F.2d at 292. Reversing the district court, we held that the RLA "makes no provision for allowance of an offset" and "[i]n the absence of such a grant the district court lacked jurisdiction to thus modify the award." *Id.* at 294. Insisting on a jurisdictional predicate for review, we reiterated that the NRAB's failure to specify "'[t]he measure of damages . . . offers no jurisdictional question.'" *Id.* (quoting *Denver & Rio Grande W. R.R. Co.*, 370 F.2d at 836); *see also Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*, 707 F.3d 791, 795 (7th Cir. 2013) (recognizing that NRAB's failure to specify the amount of damages implicates none of the RLA's statutory grounds for review). We also explained that although the award, as in this case, simply stated, "'claim sustained,'" it "left no room for a modification. It was positive in its form and its effect was unmistakable. It awarded the whole of the claim." *Blackett*, 538 F.2d at 294. And absent any other jurisdictional basis for review, we concluded that the district court should have enforced the award. *Id.*

*Blackett* compels us to conclude that the district court properly enforced the award. BNSF attempts to distinguish *Blackett* as a case in which the district court improperly modified an award, but the point is that in neither *Blackett* nor this case is there a statutory ground for reviewing the award in the first place. BNSF asserts the RLA's restrictions do not apply because the award is ambiguous, but we find nothing

- 7 -

to suggest any ambiguity.[1] The NRAB defined the claim as seeking back pay *without deduction of outside earnings*." Aplt. App. at 39 (emphasis added, quotations omitted). The parties argued their positions and the NRAB sustained the claim in full, without any limitation or equivocation. As in *Blackett*, the award "was positive in its form and its effect was unmistakable. It awarded the whole of the claim." 538 F.2d at 294. Hence, the district court properly enforced the award.[2]

---

[1]     We recognize that some courts have found it appropriate to remand when there is ambiguity in either the NRAB's award or the parties' underlying collective bargaining agreement. *See, e.g., Int'l Ass'n of Machinists and Aerospace Workers, Dist. Lodge #19 v. Southern Pac. Transp. Co.*, 626 F.2d 715, 718 (9th Cir. 1980) (award); *Bhd. Ry. Carmen Div., Transp. Commc'ns Int'l Union v. Atchison, Topeka & Santa Fe Ry. Co.*, 956 F.2d 156, 157 (7th Cir. 1992) (agreement). But courts also recognize that "[a]n award does not become so vague and indefinite as to be unenforceable simply because a party can argue that a portion of it may be unclear or ambiguous." *Bhd. of Ry. Carmen v. Belt Ry. Co. of Chicago*, 658 F. Supp. 136, 139 (N.D. Ill. 1987); *accord Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co.*, 500 F.3d 591, 593 (7th Cir. 2007) ("Trivial ambiguities in arbitration awards are not a ground for refusing to enforce them."). We need not consider the propriety of remanding for ambiguity here because as discussed above, the award is not ambiguous.

[2]     As a practical matter, we note that BNSF's position is premised on § 153 First (m), which provides, "In case a dispute arises involving an interpretation of the award, the [NRAB] upon request of either party shall interpret the award in light of the dispute." Although BNSF speculates on why the Union elected to withdraw its request for an interpretation and instead petition the district court for enforcement, nothing prevented BNSF from independently seeking an interpretation from the NRAB. In fact, BNSF apparently did request an interpretation from the NRAB, but the Union refused to waive its limitations defenses. *See* Reply Br. at 2 n.1. It appears BNSF is belatedly attempting to accomplish through this appeal what it failed to timely request during arbitration.

- 8 -

## B. *Conrail* Line of Authority is Inapposite

Seeking to avoid this result, BNSF attempts to transform this case into a dispute over the parties' collective bargaining agreement. Under *Conrail*, disputes that "arise 'out of the interpretation or application of' existing collective bargaining agreements" are classified as "minor disputes" subject to binding arbitration. *Bhd. of Maint. of Way Emps. Div.*, 596 F.3d at 1222-23 (quoting *Conrail*, 491 U.S. at 303). "'The distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing collective bargaining agreement.'" *Id.* (quoting *Conrail*, 491 U.S. at 305).

The problem with this argument, however, is that the parties do not invoke the collective bargaining agreement ("CBA"). Indeed, not one of its provisions—either express or implied—is involved and both sides agree that the CBA is silent on the issue of offset. BNSF admits, moreover, that there is "arbitral authority on both sides of the issue," Aplt. Br. at 6, all of which demonstrates that this dispute cannot "be conclusively resolved by interpreting the existing [CBA]," *Bhd. of Maint. of Way Emps. Div.*, 596 F.3d at 1222-23 (internal quotation marks omitted).

Nevertheless, BNSF contends that a "'[d]isagreement about the meaning of an award amounts to disagreement about the meaning of the underlying collective bargaining agreement.'" Aplt. Br. at 11, quoting *Bhd. of Maint. of Way Emps. v. Burlington N. R.R. Co.*, 24 F.3d 937, 938, 940 (7th Cir. 1994) ("*BMWE*"). But consistent with *Conrail*, the dispute in *BMWE* presented "a question about the

- 9 -

meaning of [the parties'] collective bargaining agreement," namely, the preclusive effect of the arbitration award. 24 F.3d at 940. Here, by contrast, the dispute concerns an unambiguous award of money damages, which presents no jurisdictional question. *See Blackett*, 538 F.2d at 294; *Denver & Rio Grande W. R.R. Co.*, 370 F.2d at 836.

Even still, BNSF contends it can compel the Union to arbitrate simply by presenting an "arguable" interpretation of the award. Aplt. Br. at 12. According to BNSF, so long as its interpretation of the award is "arguable," based on other NRAB remedies allowing offset, this is a minor dispute subject to binding arbitration. But the problem with this contention is that it confuses the award with the CBA.

As we explained in *Brotherhood of Maintenance of Way Employees*, the RLA's goal of promoting arbitration requires that courts "deem a dispute as minor if it even remotely touches on the terms of the relevant *collective bargaining agreement*." 596 F.3d at 1223 (emphasis added). To establish a minor dispute, "a party need only show that the contested action is 'arguably justified' by the terms of the collective bargaining agreement." *Id.* This standard requires that "[w]e look first and primarily . . . to both the express and implied provisions of the [CBA]," as well as "the parties' 'practice, usage and custom,'" and other factors to determine whether a claim is arguably justified by the CBA. *Id.* (quoting *Conrail*, 491 U.S. at 311).

BNSF says its interpretation of the award is arguably justified by other NRAB decisions, but the question is whether its claim is arguably justified by the CBA.

- 10 -

And without the CBA, this argument is doomed from the start. Moreover, it would be inappropriate to classify this as a minor dispute based on other arbitration remedies that, as BNSF acknowledges, are purely discretionary given the CBA's silence on the matter, *see* Aplt. Br. at 15-16; Reply Br. at 12. We also would find ourselves in the unacceptable position of classifying disputes based on what arbitrators say rather than our own assessment of the CBA and the parties' practice, usage, and custom. As the Seventh Circuit has observed, "[i]t is for the judges to say what the law is, not for the arbitrators." *Bhd. of Maint. of Way Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*, 138 F.3d 635, 642 (7th Cir. 1997).

The judgment of the district court is affirmed.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

- 11 -

# EXHIBIT
# 6



**CYNDI CUSHING**
*Director*
*Labor Relations*

**BNSF Railway Company**
2600 Lou Menk Drive
P.O. Box 961030
Fort Worth, TX 76161-0030

Telephone   817-352-3706
Fax           817-352-7482
Email Address
cyndi.cushing@bnsf.com

December 22, 2014

Ms. Linda Gathings
Arbitration Assistant
National Railroad Adjustment Board
844 North Rush, Room 944
Chicago, IL 60611-2092

Re:    NRAB Cases No. NRAB-00001-13404, and NRAB-00001-13405

Dear Ms. Gathings:

Award No. 28142, Docket 48036 and Award No. 28141, Docket 48009 were adopted by the
First Division on November 25, 2014 with Peter Meyers sitting as Referee. The Carrier requests
an Interpretation of both Award No. 28142, and Award 28141, with respect to the remedy
portion of the Award.

Specifically, the Organization is representing that (i) BNSF is improper in its practice of
offsetting monies awarded with outside earnings (despite prior practice and on-property arbitral
support) and (ii) Referee Meyers' clear intent in that Award was to preclude any outside-earnings
offset and (iii) Referee Meyers' clear intent that Claimant would be required to prove he was
medically able to work for the time period in question.

The Carrier requests an Interpretation to both Awards 28142 and 28141 for the Referee to clarify
whether the Award states any position on offset, and the proper remedy to be applied therein.

Sincerely,

Cyndi Cushing
Director Labor Relations

cc:    Matt Wilson, General Chairman BLET
        David Pryor



**NATIONAL RAILROAD ADJUSTMENT BOARD**
OF THE
**NATIONAL MEDIATION BOARD**
844 N. Rush Street, Room 944.
Chicago, IL 60611

(312) 751-4688

March 17, 2015

Award 28141
Case No. NRAB-00001-130405
Docket No. 48009
**New Case No.: NRAB-00001-150092**

Mr. M. O. Wilson, General Chairman
Brotherhood of Locomotive Engineers
 and Trainmen
1716 Western Center Boulevard
Ft. Worth, TX 76131

RE: INTERPRETATION TO AWARD 28141 and DOCKET 48009

Dear Mr. Wilson:

The First Division of the National Railroad Adjustment Board has received a Request for Interpretation to Award No. 28141, from Ms. Cyndi Cushing, Director Labor Relations, BNSF Railway Company.

You are respectfully requested to:

1. Within seventy-five (75) days of the date of this letter, both parties are requested to file with the First Division four (4) copies of their Submissions in connection with the Request for Interpretation contained in the Respondent's letter, copy of which is attached. The Submissions should include all facts, arguments and documentary evidence the parties desire the Board to consider.

2. Upon receipt of the Submissions, both parties will be advised to exchange one copy of their Submissions with the other party.

By Order of First Division

*M. C. Lesnik/ lg*

_____
M. C. Lesnik, Chairman, NRAB

*D. B. Wier/ lg*

_____
D. B. Wier, Vice Chairman

cc: Mr. M. H. Siegele
    Asst. Vice Pres.-Labor Relations
    BNSF Railway Company
    P.O. Box 961030
    Fort Worth, TX 76161-0030



**NATIONAL RAILROAD ADJUSTMENT BOARD**
OF THE
**NATIONAL MEDIATION BOARD**
844 N. Rush Street, Room 944,
Chicago, IL 60611

(312) 751-4688

March 17, 2015

Award 28142
Case No. NRAB-00001-130404
Docket No. 48036
New Case No.: NRAB-00001-150093

Mr. M. O. Wilson, General Chairman
Brotherhood of Locomotive Engineers
    and Trainmen
1716 Western Center Boulevard
Ft. Worth, TX 76131

RE: INTERPRETATION TO AWARD 28142 and DOCKET 48036

Dear Mr. Wilson:

The First Division of the National Railroad Adjustment Board has received a Request for Interpretation to Award No. 28142, from Ms. Cyndi Cushing, Director Labor Relations, BNSF Railway Company.

You are respectfully requested to:

1. Within seventy-five (75) days of the date of this letter, both parties are requested to file with the First Division four (4) copies of their Submissions in connection with the Request for Interpretation contained in the Respondent's letter, copy of which is attached. The Submissions should include all facts, arguments and documentary evidence the parties desire the Board to consider.

2. Upon receipt of the Submissions, both parties will be advised to exchange one copy of their Submissions with the other party.

By Order of First Division

*M. C. Lesnik/ lg*

M. C. Lesnik, Chairman, NRAB

*D. B. Wier/ lg*

D. B. Wier, Vice Chairman

cc: Mr. M. H. Siegele
    Asst. Vice Pres.-Labor Relations
    BNSF Railway Company
    P.O. Box 961030
    Fort Worth, TX 76161-0030

# EXHIBIT
# 7



**Jason Jenkins**
General Manager - Chicago

**BNSF Railway Company**
3611 West 38th Street
Chicago, Illinois 60632
Telephone: 773-579-5000

December 22, 2014

**E-Certified: 91 7199 9991 7034 8600 6060**
Employee No. 7314644
Mr. Anthony W. Smith
900 Hull Ave
Westchester, IL 60154-2625

Dear Mr. Smith:

This is a reinstatement with seniority and benefits restored and with pay for time lost based upon Awards 28141 and 28142 of the NRAB 1st Division. Pay for time lost will be offset by outside earnings, monies due RRB and/or employee paid Health & Welfare premiums.

AWS                                                                          AWS

On June 6, 2012, Mr. Smith, while working as an Engineer on the Chicago Division, you was dismissed from employment as the result of an investigation held on May 22, 2012 for failure to stop before passing a signal displaying a stop indication and passing the signal by 90 feet on June 2, 2011 on the Chicago Subdivision. On November 26, 2012, Mr. Smith you was dismissed from employment as the result of an investigation held on November 7, 2012 for failure to stop before passing a signal displaying a stop indication, failure to report Emergency on the radio, and failure to notify the Train Dispatcher after passing the signal on March 13, 2012 on the Chicago Subdivision.

BNSF Railway will begin the reinstatement process with the understanding that:

1. Mr. Smith you must contact the BNSF Railway Office by **1000 hours, January 5, 2015**, to arrange a meeting with the Superintendent Operations Tim Merriweather, (708) 924-5471 and/or Ruth McCullum (773) 579-5102, to ensure the reinstatement progresses in a timely fashion. During the meeting there will be discussions communicating expectations and the importance of rules compliance, safe behavior, in addition to reviewing your previous work history. Also, at that time it will be determined if you will be required to undergo any other return to service rules testing, training and/or re-qualification.

2. You will be given the material necessary to complete the book of rules examination as explained below, arrange for any rules testing, training and re-qualification trips required for your return. Please arrange to pick up the current copies of the System Special Instructions, Division Timetable, Hazardous Material Instructions, and all revisions for the rulebook and Form 1690A questionnaire with answer sheet. You will be required to correctly answer a 1690A (730 question open book) questionnaire and return both the book and the answer sheet to the officer in charge for review.

3. You must complete all modules and tests associated with the current BIENNIEL rules using the (CBT) Computer Based Training Program. This is a multiple choice, closed book examination, except; System Special Instructions, Division Timetable and Hazardous Material Instructions may be used where instructions supervisor will coordinate administration of this examination.

4. Mr. Smith you will be required to undergo and pass a physical examination and drug screen to ascertain your fitness for duty, and recommended treatment as a result of the medical examination before returning to service; you must pass the required physical examination. The BNSF Railway Medical Department will contact you regarding required return to service physical examinations and drug/alcohol testing. Upon release by the Medical Department, it will be determine if you Mr. Smith is required to undergo locomotive engineer re-certification in order to return to service. If so, you will be notified re-certification requirements and scheduling.

5. Mr. Smith you have **two weeks** from the time the Medical Department contacts you to complete the required return to service physical examination and/or drug and alcohol testing. Following the results being reviewed and approved by BNSF'S Chief Medical Examiner and your release (passing exam) by that office, you will be reinstated to service.

6. Upon successful completion of the above, you will be reinstated to service, provided equipment, and applicable Personal Protective Equipment required for your duties. If you need forms for safety boots and safety glasses please request them during your orientation.

Upon satisfying the above conditions, the Carrier will reinstate you to service. Your signature below confirms that you understand, agree and accept the terms of the reinstatement as stated above.

Sincerely,

*Jason Jenkins*

Jason Jenkins
General Manager- Chicago

cc:    Personnel Records, Fort Worth
       Jared York - Manager, Labor Relations
       Tim Merriweather– Superintendent Operations
       Jeremy Schroeder – Terminal Manager
       Medical Department


I acknowledge receipt:

| Anthony W Smith | 708-651-6179 | 12-30-14 |
|---|---|---|
| **Signature** | **Phone No.** | **Date** |

# Exhibits
# 8

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.net

May 15, 2015

Jerry LaPrath
Brotherhood of Locomotive Engineers
And Trainmen
1716 Western Center Boulevard
Ft. Worth, TX. 76131

Dear Mr. LaPrath:

Thank you for your time and consideration. I am writing today concerning the Arbitration award No's 28141 and 28142. Both award's state per the sustained claims that," It is hereby requested that Engineer A. W. Smith's discipline be reversed with seniority unimpaired. Requesting pay for all time lost, without deduction of outside earnings, including the days(s) for investigation, with restoration of **full benefits** and that the notation dismissal, be removed from his personal record, resulting from investigation held".

At this time all the **full benefits** have not been restored. I have no vacation available for 2015. I have no personal leave days available for 2015. I have been denied FMLA for 2015. These 2015 benefits should not be tied to back-pay because full benefits should have been restored.

In the lawsuit filed January 15, 2015 in the United States District Court for the District of Wyoming it does not address the vacation for 2015, personal leave days, nor FMLA. What remedy does the BLET have for resolving these benefit issues?

Sincerely,


Anthony W. Smith

# Exhibits
# 9

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.net

May 18, 2015

Dennis Pierce
National President
BLET National Division
1370 Ontario St.-Mezzaine
Cleveland, Ohio 44113-1702

Dear Mr. Pierce:

My name is Anthony W. Smith and I am writing you today concerning the handling of my won arbitration award against the BNSF Railway Company. I am not comfortable with the handling of my case.

There were two awards that the Arbitrator sustained per the findings. They were Award's No.'s 28141 and 28142. The award came from the National Railroad Adjustment Board First Division per Referee Peter R. Meyers on November 25, 2014 and the Carrier was ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.

On January 15, 2015 @ 4:30 pm the BLET GCA filed a federal lawsuit in Cheyenne, WY against the BNSF Railway Company. The lawsuit is a petition to enforce back pay provision in National Railroad Adjustment Board Orders. The lawsuit is pending at this time.

My problem with the handling of the case is that my full benefits have not been restored at this time and I do not see where the benefits are being addressed. The award was won in 2014 and I am entitled to vacation, personal leave, and FMLA benefits for 2015 and to date I do not have them nor is it being addressed in the federal lawsuit. I have addressed this issue with the General Chairman office but I have not received a clear answer. Can you help me in any way?

Sincerely,


Anthony W. Smith

# Exhibits
# 10

# BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN

1370 Ontario Street
Standard Building, Mezzanine
Cleveland, Ohio 44113-1702

Phone: 216.241.2630
Fax: 216.241.6516
www.ble-t.org

**DENNIS R. PIERCE**
National President



May 29, 2015

Mr. A. W. Smith
Member, Division 32, BLET
900 Hull Avenue
Westchester, IL 60154

Re:    National Railroad Adjustment Board First Division Award Nos. 28141 and 28142

Dear Sir and Brother:

This responds to your May 18, 2015 letter pertaining to the above-referenced subject, which was received by the National Division on May 21, 2015. Your letter enclosed a copy of the following documents:

1. a December 4, 2014 letter from Vice Chairman LaPrath advising that the two (2) claims prosecuted on your behalf had been sustained and forwarding copies of the Awards;

2. pages 1 and 3 of First Division Award No. 28141;

3. First Division Award No. 28142; and

4. the Petition to Enforce the back-pay provisions in the two (2) Awards.

You point out that, on January 15, 2015, the GCA filed the aforementioned Petition in the United States District Court for the District of Wyoming, and that the matter is pending at this time. You express a concern regarding the handling of the case because, you state, your full benefits have not been restored at this time and you cannot not see where in the Petition to Enforce the benefits are being addressed. You further state that the awards were issued in 2014 and you are entitled to vacation, personal leave, and Family and Medical Leave Act ("FMLA") benefits for 2015. However, to date you have not been afforded them, nor is this issue addressed in the litigation. Lastly, you advise that you have addressed this issue with the General Chairman's office but have not received a clear answer, and you ask whether I can provide any assistance, as you are "not comfortable" with the handling of your case.

At the outset, Brother Smith, I must tell you that cases such as yours are governed by Section 36(a) – General Committee Rules ("GCR") of the BLET Bylaws, which states as follows:

**Mr. A. W. Smith** **(2)** **May 29, 2015**

The right to make and interpret contracts, rules, rates of pay and working conditions for operating crafts shall be vested in the regularly constituted GCA of the BLET. When an interpretation involves a provision originating in a National Agreement, the GCA must apply in writing to the National President for his interpretation of the provision, and must be governed by said interpretation in its dealings with the carrier regarding that provision.

Further, GCR Section 11(e) provides that the general chairman "shall be recognized as the GCA between meetings of that body; and his decision on all matters within the scope of authority of the GCA shall be made effective," except for a few exclusions that do not apply in this situation. Therefore, this matter is properly in General Chairman Wilson's hands and I am forbidden by Brotherhood law from intervening in this matter, absent a specific request from Brother Wilson.

The above being said, I would make a few observations that may help you understand the current status of your case. First, the Statement of Claim in both cases requested that "restoration of full benefits" be included in the remedy; since the Awards both stated that the claim was "sustained in accordance with the Findings" — and because those Findings did not specifically exclude any of your fringe benefits — it is my reading of the Awards that the Board ordered that the Carrier restore full benefits.

Further, it appears to me that the enforcement litigation is intended to preclude a Carrier argument that it is entitled to offset any non-railroad earnings you may have made during the period of your dismissal from back pay that is due to you. Accordingly, the non-inclusion of a judicial remedy for benefits does not seem to me to be a waiver of your rights to have full benefits restored. That being said, you should write to General Chairman Wilson for clarification of that point.

Finally — and in response to your statement that you have not yet been afforded the 2015 vacation, personal leave and FMLA benefits to which you believe you are entitled — Referee Meyers "order[ed] that prior to returning [you] to service, the Carrier has the right to test and re-train [you] with respect to [your] abilities as a Locomotive Engineer, as well as evaluate [your] medical fitness to operate in that capacity ... [and o]nly after those tests are completed to the satisfaction of the Carrier must [you] be returned to service." Your letter does not indicate whether that process has been completed; if it hasn't, that may explain why the necessary adjustments to your paid time-off have not yet been made. In any event this, once again, is a subject that only your GCA has the authority to handle.

Trusting you will find the above helpful, and with warmest personal regards, I remain

Fraternally yours,

National President

**Mr. A. W. Smith**                     **(3)**                         **May 29, 2015**

cc:     E. L. Pruitt, First Vice President
         S. J. Bruno, National Secretary-Treasurer
         M. D. Priester, Vice President
         M. O. Wilson, Chairman, BNSF/MRL GCA

# Exhibits
# 11

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.net

June 5, 2015

Dennis R. Pierce
National President BLET
1370 Ontario Street
Standard Building Mezzanine
Cleveland, Ohio 44113-1702

Dear Sir and Brother:

I am in receipt of your May 29, 2015 letter addressing the concerns that I have about the handling of my won arbitration cases. You made it clear that you have no jurisdiction in my case unless you receive a request from General Chairman Wilson.

I feel a need to keep you informed. I have been back to work since February 5, 2015. Here is a copy of the reinstatement letter I signed in December 30, 2014. The BNSF combined the reinstatement letter with terms for back pay.

It is difficult for me to understand how the BNSF Railway Company restores some benefits like health but not others like vacation. I can understand how vacation for 2013 and 2014 may be apart of the back pay issue because I cannot take them at this time but I view 2015 differently because I can take them now. I see no documented reason for holding back the benefits that I am do. Yes I have addressed these same concerns with the GCA.

Sincerely,


Anthony W. Smith

# Exhibits
# 12

# BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN

1370 Ontario Street
Standard Building, Mezzanine
Cleveland, Ohio 44113-1702



Phone: 216.241.2630
Fax: 216.241.6516
www.ble-t.org

**DENNIS R. PIERCE**
National President

June 16, 2015

Mr. A. W. Smith
Member, Division 32, BLET
900 Hull Avenue
Westchester, IL 60154

Re:     National Railroad Adjustment Board First Division Award Nos. 28141 and 28142

Dear Sir and Brother:

This responds to your June 5, 2015 letter pertaining to the above-referenced subject, which was received by the National Division on June 11, 2015, and which replied to my May 29, 2015 letter to you. I thank you for the additional information, and I am confident that your GCA is working to provide you with the ability to take your 2015 vacation. With warmest personal regards, I remain

Fraternally yours,

National President

cc:     E. L. Pruitt, First Vice President
        S. J. Bruno, National Secretary-Treasurer
        M. D. Priester, Vice President
        M. O. Wilson, Chairman, BNSF/MRL GCA
        M. Fox, Local Chairman, Division 32

**A Division of the Rail Conference—International Brotherhood of Teamsters**

# Exhibits
# 13

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.ner

June 18, 2015

Dennis R. Pierce
National President BLET
1370 Ontario Street
Standard Building Mezzainine
Cleveland, Ohio 44113-1702

Dear Sir and Brother:

I received a copy of a letter from the BNSF to the NRAB requesting an interpretation
of the NRAB Award No. 28142, Docket 48036 and Award No. 28141, Docket 48009.
Paying attention to (iii) "Referee Meyers clear intent that Claimant would be
required to prove he was medically able to work for the time period in question".
Though the Referee Meyers does address medically able he does not stipulate for
the time period in question.


Sincerely,



Anthony W. Smith

# Exhibits
# 14



# Brotherhood of Locomotive Engineers and Trainmen

## GENERAL COMMITTEE OF ADJUSTMENT
### BURLINGTON NORTHERN SANTA FE – MONTANA RAIL LINK

*VICE CHAIRMEN*
**JERRY LAPRATH**
**KENT PSOTA**
**MATT BRANDT**

*SECRETARY-TREASURER*
**JIM H. NELSON**
4237 ORCHARD DRIVE
GALESBURG, IL 61401

1716 WESTERN CENTER BOULEVARD
FT. WORTH, TX 76131
TEL (817) 338-9010 • FAX (817) 338-9088

**MATT O. WILSON**
*GENERAL CHAIRMAN*

June 26, 2015

Anthony W. Smith
900 Hull Ave.
Westchester, Illinois 60154

Certified Mail # 7012 1010 0001 7691 0569

Dear Mr. Smith;

This letter is in reply to your letter dated May 15, 2015, expressing concerns related to restoration of your full benefits and asking what remedy the BLET has for resolution. Although we have had numerous conversations related to your concerns, I will again attempt to remedy this with you.

You currently have 42 days of vacation credited to you. I've already suggested, back in February of this year, that you reach out to your supervisors and the crew office as to the scheduling of that. I have no indication that you have done so. As relates to your Annual Leave; when you marked up after successfully completing your return to work requirements, you were credited with eleven (11) Annual Leave Days. Crew records indicate you have utilized three of those days, so I'm unable to explain why you feel you have no personal days available.

As to your other concerns; I've asked (on numerous occasions) that you provide us with necessary documentation and information, to no avail. Your lack of cooperation and compliance with these requests is negating our efforts to address your concerns. Absent your cooperation, we may be prohibited from progressing forward and therefore unable to adequately address your concerns.

Sincerely,

Jerry LaPrath

Jerry LaPrath
Vice Chairman BLET

# Exhibits
# 15

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.net

July 3, 2015

Jerry LaPrath
Vice Chairman BLET
1716 Western Center Boulevard
Ft. Worth, TX 76131

Dear Mr. LaPrath:

I am in receipt of your June 26, 2015 letter addressing my concerns related to restoration of my full benefits, which at this time are not restored, and asking what remedy the BLET has for resolution. I am forwarding a copy of my 816 reports that will reflect no vacations or personal leave days as of June 30, 2015.

I am not aware of any documents and information that I have that would prohibit the BLET from progressing forward and addressing my concerns. What are those documents that you refer to? I will not at this time provide any W-2's for any job outside of the BNSF. The arbitration award clearly states that there should be no deductions for outside earnings. If you are looking for documents from outside earnings I will ask why and for what reason?

It had been brought to my attention that the U. S. District Court District of Wyoming lawsuit filed on January 15, 2015 has been dismissed as of June 12, 2015. This lawsuit was dismissed prior to your letter on June 26, 2015 and yet you did not address the dismissal in your letter or a remedy to addressing the Petition to Enforce Back-Pay provision in National Railroad Adjustment Board Orders. What is the BLET remedy for my back-pay issue?

I am in receipt of the letter from the BNSF dated December 22, 2014 requesting an interpretation from the arbitrator with respect to the remedy portion of the award. What is the current status of this request? Can you assist in helping this along?

Sincerely,


Anthony W. Smith

# Exhibits
# 16

# BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN

1370 Ontario Street
Standard Building, Mezzanine
Cleveland, Ohio 44113-1702



Phone: 216.241.2630
Fax: 216.241.6516
www.ble-t.org

**DENNIS R. PIERCE**
National President

July 6, 2015

Mr. A. W. Smith
Member, Division 32, BLET
900 Hull Avenue
Westchester, IL 60154

Re:    National Railroad Adjustment Board First Division Award Nos. 28141 and 28142

Dear Sir and Brother:

This responds to your June 18, 2015 letter pertaining to the above-referenced subject, which was received by the National Division on June 25, 2015, and follows up on previous correspondence. I thank you for providing me with documents concerning the Carrier's request for an interpretation of the above Awards, which have been placed in our files.

I note that General Chairman Wilson is copied on the Carrier's request to the National Railroad Adjustment Board and is the addressee on the Board's Notices. As I explained in my May 29, 2015 letter, Brother Wilson is the BLET officer with responsibility for handling these matters under Brotherhood law, and I am confident that he will vigorously defend your position. I am also providing copy of this response to Vice President Marcus Ruef, who is Head of the National Division's Arbitration Department, and Director of Arbitration Doug Davidson for their information. With warmest personal regards, I remain

Fraternally yours,

National President

cc:    E. L. Pruitt, First Vice President
S. J. Bruno, National Secretary-Treasurer
M. D. Priester, Vice President
M. J. Ruef, Vice President
M. O. Wilson, Chairman, BNSF/MRL GCA
M. Fox, Local Chairman, Division 32
D. W. Davidson, Assistant Director of Arbitration

**A Division of the Rail Conference—International Brotherhood of Teamsters**

# Exhibits
# 17

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.net

August 7, 2015

Jerry LaPrath
Vice Chairman BLET
1716 Western Center Boulevard
Ft. Worth, TX 76131

Dear Mr. LaPrath:

I am a member in good standing with the BLET. I have not received a response to my July 3, 2015 letter requesting the BLET remedy for my back-pay issue as well as the status on the BNSF request for an interpretation from the arbitrator with respect to the remedy portion of the award. The U.S. RRB Service and Compensation on Record has not been restored. Missing at this time is July thru December of 2012, all of 2013 & 2014, and January 2015. The BNSF request for an interpretation does not address the U. S. RRB credit or deem. Therefore am interpretation should not put a hold on the U.S. RRB credit or deem for the months mentioned.

The BLET Bylaws **Mission** statement: The Brotherhood of Locomotive Engineers and Trainman exists to promote and protect the rights, interests, and safety of its members through solidarity, aggressive representation, and education.

**Vision**: It is the vision of the Brotherhood of Locomotive Engineers and Trainmen to be at the forefront of the labor movement as the result of grassroots involvement, expanding membership, and cohesiveness among the engineer and trainman crafts and with other unions.

It will be well known for its excellence in education, communication, political action, and strategic planning. It will be a democratic organization with deeply held values and ideals that advance the working conditions, wages, benefits, job security, and quality of life for its present and future members and their families.

Has the GCA called upon the National President for assistance with my cases, per General Committee Rule's section 11 (a)?

I am forwarding a copy of my reinstatement letter from the BNSF as well as the recent copy of the RRB Service and Compensation for your review. Please respond as soon as possible.

The National President Dennis R. Pierce assured me that he had confidence that the GCA office would vigorously defend my position. I believe that he is accurate and I trust that it will be done. I need to understand where the GCA office is at this point.

I have also not received the type or name of the documents and information that you are requesting of me. If I knew what they were I could comply with your wishes.


Sincerely


Anthony W. Smith

# Exhibits
# 18

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.net

August 8, 2015

Dennis R. Pierce
National President BLET
1370 Ontario Street
Standard Building Mezzainine
Cleveland, Ohio 44113-1702

Dear Sir and Brother:

Thank you so much for your time and consideration. I am forwarding you my reinstatement letter dated December 22, 2014 from BNSF Jason Jenkins General Manager-Chicago, which states that monies are due RRB. I am forwarding you a copy of RRB Service and Compensation on Record. The record reflects July to December 2012, all of 2013 and 2014, and January of 2015, do not have a credit or deem. The BNSF has a request to the arbitrator for an interpretation of the award but that should not put a hold on the RRB portion of this award. It is now approaching a year and this RRB issue should have been resolved before now.

Thank you, for listening.

Fraternally yours,

Anthony W. Smith

# Exhibits
# 19

# BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN

1370 Ontario Street
Standard Building, Mezzanine
Cleveland, Ohio 44113-1702



Phone: 216.241.2630
Fax: 216.241.6516
www.ble-t.org

**DENNIS R. PIERCE**
National President

August 20, 2015

Mr. A. W. Smith
Member, Division 32, BLET
900 Hull Avenue
Westchester, IL 60154

Re:   Railroad Retirement Service Months Credits Due from Back Pay Awarded by National
      Railroad Adjustment Board First Division Award Nos. 28141 and 28142

Dear Sir and Brother:

This responds to your August 8, 2015 letter — sent via Certified Mail No. 7015 1520 0000 1142
1884 — pertaining to the above-referenced subject, which was received by the National Division
on August 17, 2015, and follows up on previous correspondence regarding the cited Awards.
Your latest letter points out that you have yet to receive service month credits with the Railroad
Retirement Board for the months for which the First Division ordered back pay, and you are dis-
satisfied with the length of time it is taking for the credits to be reflected in the Board's records.

Brother Smith, as I indicated in my May 29 letter to you — and as also is reflected in my June 16
and July 6 letters — cases such as yours are governed by Section 36(a) – General Committee
Rules ("GCR") of the BLET Bylaws, which states as follows:

> The right to make and interpret contracts, rules, rates of pay and working conditions
> for operating crafts shall be vested in the regularly constituted GCA of the BLET. When
> an interpretation involves a provision originating in a National Agreement, the GCA must
> apply in writing to the National President for his interpretation of the provision, and must
> be governed by said interpretation in its dealings with the carrier regarding that provision.

Further, GCR Section 11(e) provides that the general chairman "shall be recognized as the GCA
between meetings of that body; and his decision on all matters within the scope of authority of
the GCA shall be made effective," except for a few exclusions that do not apply in this situation.
Therefore, this matter is properly in General Chairman Wilson's hands and I am forbidden by
Brotherhood law from intervening in this matter, absent a specific request from Brother Wilson.

Inasmuch as this is a matter for General Chairman Wilson's handling, by copy of this response I
am providing him with a copy of your letter and enclosures. With warmest personal regards, I
remain

**Mr. A. W. Smith**                    **(2)**                    **August 20, 2015**

Fraternally yours,

National President

cc:    E. L. Pruitt, First Vice President
       S. J. Bruno, National Secretary-Treasurer
       M. D. Priester, Vice President
       M. J. Ruef, Vice President
       M. O. Wilson, Chairman, BNSF/MRL GCA
       M. Fox, Local Chairman, Division 32
       D. W. Davidson, Director of the Arbitration Department

# Exhibits
# 20

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.net

September 11, 2015

Dennis R. Pierce
National President
BLET
1370 Ontario Street
Standard Building, Mezzanine
Cleveland, Ohio 44113-1702

I am in receipt of your August 20, 2015 letter. Thank you for your time and consideration. I am aware that the BLET National Division has an Arbitration Department and that you are a former BLET GCA. I do not think that I understand the arbitration process very well and I need your help with my concerns. I won the NRAB 1st Division arbitration award 28141 and 28142 on November 25, 2014 and I would like to know what is the time line for this award to be satisfied by the BNSF? The lawsuit filed by the GCA in Cheyenne, WY has been dismissed on the grounds of personnel jurisdiction. Should there be another one filed in another state in which there is a personnel jurisdiction? Based on the NRAB U.S. Code " if a carrier does not comply with an order of a division of the Adjustment Board within the time limit (30 days) the petitioner may file in the District Court of the United States". Is this statement accurate? Have you received a specific request from Brother Wilson?

I am forwarding you a copy of letters that I have written to the Assistant General Chairman Jerry LaPrath and at this time I have not received a written or verbal response from the GCA. I wrote a letter on July 3, 2015 and another on August 7, 2015. The last response that I received from the GCA was on June 26, 2015 and after that time I was able to use my 2015 vacation and personal leave days.

The GCA is behaving in an unprofessional manner. Brother Pierce is this an appropriate response time for the GCA? I have paid dues to the BLET for over 25 years and this is the first time that I seriously needed to use the organization. In asking the organization for help on this serious matter I get no response from the GCA and an, it's not my responsibility from the National President.

This is a very serious matter to me and I am very surprised as to the response that I am getting from the BLET. I would not like to think that the BLET is treating me differently than it treats other members. I also would not like to think that the BLET treats all its members in this manner either.

In reading the BLET Bylaws October, 2010 it states Section 3(a) "

The ND shall have full and exclusive jurisdiction over all rail operating craft employees and the subjects pertaining to the BLET". " For the purpose of clarity, President of the ND will be referred to as "National President".

You address the RRB in your August 20, 2015 letter briefly. Does the ordered back pay need to be satisfied before the months can be a credit or deem? Is it possible to credit or deem based on 2014 vacation amount?

I am writing you because I am in a dilemma and I need your help in understanding exactly what I am up against. I would appreciate your help Brother Pierce.

Sincerely,


Anthony W. Smith

# Exhibits
# 21

Anthony W. Smith
900 Hull Avenue
Westchester, Illinois 60154
708-651-6179
bnsfengr@comcast.net

November 3, 2015

Matt Wilson
General Chairman BLET
1716 Western Center Boulevard
Ft. Worth, TX. 76131

Dear Mr. Wilson:

My name is Anthony W. Smith and I am writing you today concerning the
Arbitration award No's 28141 and 28142. Both awards state per the sustained
claims that, " It is hereby requested that Engineer A. W. Smith discipline be reversed
with seniority unimpaired. Requesting pay for all time lost, without deduction of
outside earnings, including the day(s) for investigation, with restoration of **full
benefit** and that the notation dismissal, be removed from his personal record,
resulting from investigation held".

I have written Jerry LaPrath concerning this matter several times and I have not
received a written response. I am enclosing the letters in this correspondence to
you. It's now approaching a year since the awards were won and I have not been
made whole by the BNSF.

The lack of response from the GCA has concerned me because I am not aware of
what you are doing with respect to these cases. Based on the last letter that I
received from Jerry LaPrath dated June 26, 2015 and the lack of response from the
GCA I conclude that you have exhausted your effort to seek resolution of these cases.
If I do not receive a response within 15 days of your receipt of this letter I will
conclude that my interpretation is correct and I will began to resolve these cases in
another manner.

Sincerely,


Anthony W. Smith

# EXHIBITS
# 22

TERMED

# U.S. District Court
## District of Wyoming (Cheyenne)
## CIVIL DOCKET FOR CASE #: 2:15-cv-00008-ABJ

Brotherhood of Locomotive Engineers and Trainmen v. BNSF
Railway Company
Assigned to: Honorable Alan B Johnson
Referred to: Honorable Kelly H Rankin
Cause: 45:151 Railway Labor Act

Date Filed: 01/15/2015
Date Terminated: 06/12/2015
Jury Demand: None
Nature of Suit: 740 Labor: Railway Labor
Act
Jurisdiction: Federal Question

### Plaintiff

**Brotherhood of Locomotive Engineers
and Trainmen**

represented by **Kathleen M Karpan**
KARPAN & WHITE
1107 West 6th Avenue
Cheyenne, WY 82001
307/637-0143
Fax: 307/637-0477
Email: kathykarpan@hotmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**BNSF Railway Company**

represented by **David M Pryor**
BURLINGTON NORTHERN SANTA
FE RAILWAY COMPANY
2500 Lou Menk Drive, AOB-3
Fort Worth, TX 76131-2828
817/352-2286
Fax: 817/352-2399
Email: david.pryor@bnsf.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**George E Powers , Jr**
SUNDAHL POWERS KAPP &
MARTIN
P O Box 328
Cheyenne, WY 82003-0328

307/632-6421
Fax: 307/632-7216
Email: gpowers@spkm.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/15/2015 | 1 | COMPLAINT (2 summons(es) issued) ( Filing fee $400 receipt #Chy021046.), filed by Brotherhood of Locomotive Engineers and Trainmen. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet) (Court Staff, skl) Modified on 1/15/2015 (Court Staff, skl). Sent Magistrate Consent form via US Mail on 1/15/2015. (Attachment 1 replaced on 2/12/2015) (Court Staff, sth). (Entered: 01/15/2015) |
| 02/05/2015 | 2 | SUMMONS Returned Executed by Brotherhood of Locomotive Engineers and Trainmen. BNSF Railway Company served on 1/22/2015, answer due on 2/12/2015 (White, Margaret) (Entered: 02/05/2015) |
| 02/11/2015 | 3 | (TEXT-ONLY) ORDER by the Honorable Alan B Johnson. On February 11, 2015, the parties made a Stipulated Oral Motion for an extension of time fourteen (14) days within which Defendant must answer or move to dismiss the complaint pursuant to Local Rule 6.1(b). The Court GRANTS the motion and Defendant must answer or move to dismiss the complaint on or before February 26, 2015. BNSF Railway Company answer due 2/26/2015(Court Staff, smf) (Entered: 02/11/2015) |
| 02/11/2015 | 4 | NOTICE of Attorney Appearance by George E Powers, Jr on behalf of BNSF Railway Company (Powers, George) (Entered: 02/11/2015) |
| 02/11/2015 | 5 | CORPORATE DISCLOSURE filed by BNSF Railway Company,. (Powers, George) (Entered: 02/11/2015) |
| 02/11/2015 | 6 | MOTION REFERRED TO Judge Kelly H Rankin. MOTION for David M. Pryor to appear pro hac vice; Check tendered; filed by Defendant BNSF Railway Company. (Attachments: # 1 Affidavit Of David M. Pryor For Admission Pro Hac Vice, # 2 Proposed Order Granting Respondent's Counsel David M. Pryor Pro Hac Vice)(Powers, George) (Entered: 02/11/2015) |
| 02/11/2015 | 7 | ORDER granting 6 Motion to Appear Pro Hac Vice admitting David M. Pryor for BNSF Railway Company by the Honorable Kelly H. Rankin.(Court Staff, szr) (Entered: 02/11/2015) |
| 02/25/2015 | 8 | AMENDED COMPLAINT against Defendant BNSF Railway Company, filed by Brotherhood of Locomotive Engineers and Trainmen. (Attachments: # 1 Exhibit) (Court Staff, sth) (Entered: 02/25/2015) |
| 03/11/2015 | 9 | MOTION to Dismiss for Lack of Jurisdiction, *Motion To dismiss For Lack Of Personal Jurisdiction or, Alternatively, Motion To Transfer Venue* filed by Defendant BNSF Railway Company. (Powers, George) (Entered: 03/11/2015) |

| 03/11/2015 | 10 | MEMORANDUM in Support of 9 Motion to Dismiss/Lack of Jurisdiction filed by Defendant BNSF Railway Company. (Attachments: # 1 Affidavit Declaration Of Cyndi K. Cushing, # 2 Affidavit Declaration Of Dustin Almaguer) (Powers, George) (Entered: 03/11/2015) |
| --- | --- | --- |
| 03/24/2015 | 11 | OPPOSITION to 9 Motion to Dismiss/Lack of Jurisdiction filed by Plaintiff Brotherhood of Locomotive Engineers and Trainmen. (Attachments: # 1 Affidavit) (White, Margaret) (Entered: 03/24/2015) |
| 03/24/2015 | 12 | MEMORANDUM in Opposition to 10 Memorandum in Support of Motion filed by Plaintiff Brotherhood of Locomotive Engineers and Trainmen. (Attachments: # 1 Exhibit) (White, Margaret) (Entered: 03/24/2015) |
| 03/31/2015 | 13 | REPLY to 10 Memorandum in Support of Motion, 12 Memorandum in Opposition, 11 Opposition, 9 Motion to Dismiss/Lack of Jurisdiction *Reply In Support Of Its Motion To Dismiss For Lack of Personal Jurisdiction Or, Alternatively, Motion To Transfer Venue* filed by Defendant BNSF Railway Company. (Powers, George) (Entered: 03/31/2015) |
| 05/11/2015 | 14 | SUPPLEMENT re 10 Memorandum in Support of Motion, 9 Motion to Dismiss/Lack of Jurisdiction filed by Defendant BNSF Railway Company. (Powers, George) (Entered: 05/11/2015) |
| 05/19/2015 | 15 | REPLY to 14 Supplement filed by Plaintiff Brotherhood of Locomotive Engineers and Trainmen. (White, Margaret) (Entered: 05/19/2015) |
| 06/12/2015 | 16 | ORDER by the Honorable Alan B Johnson granting 9 Motion to Dismiss for Lack of Personal Jurisdiction. (Court Staff, sth) (Entered: 06/12/2015) |
| 06/12/2015 | 17 | JUDGMENT by the Honorable Alan B Johnson in favor of Respondent/Defendant and against Petitioner/Plaintiff. (Court Staff, sth) (Entered: 06/12/2015) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 07/03/2015 03:52:31 | | |
| PACER Login: | Anthonywsmith1:4608358:0 | Client Code: | 15-08 |
| Description: | Docket Report | Search Criteria: | 2:15-cv-00008-ABJ |
| Billable Pages: | 2 | Cost: | 0.20 |

# EXHIBITS
# 23

(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute. In case a dispute arises involving an interpretation of the award, the division of the board upon request of either party shall interpret the award in the light of the dispute.

(n) A majority vote of all members of the division of the Adjustment Board eligible to vote shall be competent to make an award with respect to any dispute submitted to it.

(o) In case of an award by any division of the Adjustment Board in favor of petitioner, the division of the Board shall make an order, directed to the carrier, to make the award effective and, if the award includes a requirement for the payment of money, to pay to the employee the sum to which he is entitled under the award on or before a day named. In the event any division determines that an award favorable to the petitioner should not be made in any dispute referred to it, the division shall make an order to the petitioner stating such determination.

(p) If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however,* That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

(q) If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of title 28.

(r) All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrues under the award of the division of the Adjustment Board, and not after.

(s) The several divisions of the Adjustment Board shall maintain headquarters in Chicago, Illinois, meet regularly, and continue in session so long as there is pending before the division any matter within its jurisdiction which has been submitted for its Consideration and which has not been disposed of.

(t) Whenever practicable, the several divisions or subdivisions of the Adjustment Board shall be supplied with suitable quarters in any Federal building located at its place of meeting.

(u) The Adjustment Board may, subject to the approval of the Mediation Board, employ and fix the compensations of such assistants as it deems necessary in carrying on its proceedings. The compensation of such employees shall be paid by the Mediation Board.

(v) The Adjustment Board shall meet within forty days after June 21, 1934, and adopt such rules as it deems necessary to control proceedings before the respective divisions and not in conflict with the provisions of this section. Immediately following the meeting of the entire Board and the adoption of such rules, the respective divisions shall meet and organize by the selection of a chairman, a vice chairman, and a secretary. Thereafter each division shall annually designate one of its members to act as chairman and one of its members to act as vice chairman: *Provided, however,* That the chairmanship and vice-chairmanship of any division shall alternate as between the groups, so that both the chairmanship and vice-chairmanship shall be held alternately by a representative of the carriers and a representative of the employees. In case of a vacancy, such vacancy shall be filled for the unexpired term by the selection of a successor from the same group.

(w) Each division of the Adjustment Board shall annually prepare and submit a report of its activities to the Mediation Board, and the substance of such report shall be included in the annual report of the Mediation Board to the Congress of the United States. The reports of each division of the Adjustment Board and the annual report of the Mediation Board shall state in detail all cases heard, all actions taken, the names, salaries, and duties of all agencies, employees, and officers receiving compensation from the United States under the authority of this chapter, and an account of all moneys appropriated by Congress pursuant to the authority conferred by this chapter and disbursed by such agencies, employees, and officers.

(x) Any division of the Adjustment Board shall have authority, in its discretion, to establish regional adjustment boards to act in its place and stead for such limited period as such division may determine to be necessary. Carrier members of such regional boards shall be designated in keeping with rules devised for this purpose by the carrier members of the Adjustment Board and the labor members shall be designated in keeping with rules devised for this purpose by the labor members of the Adjustment Board. Any such regional board shall, during the time for which it is appointed, have the same authority to conduct hearings, make findings upon disputes and adopt the same procedure as the division of the Adjustment Board appointing it, and its decisions shall be enforceable to the same extent and under the same processes. A neutral person, as referee, shall be appointed for service in connection with any such regional adjustment board in the same circumstances and manner as provided in paragraph (1) of this section, with respect to a division of the Adjustment Board.

**Second. System, group, or regional boards: establishment by voluntary agreement; special adjustment boards: establishment, composition, designation of representatives by Mediation Board, neutral member, compensation, quorum, finality and enforcement of awards**